HENDERSON, CORRECTIONAL SUPERINTEND-
ENT *v.* MORGAN

No. 74–1529. Argued February 24, 1976—Decided June 17, 1976

STEVENS, J., delivered the opinion of the Court, in which BRENNAN, STEWART, WHITE, MARSHALL, BLACKMUN, and POWELL, JJ., joined. WHITE, J., filed a concurring opinion, in which STEWART, BLACKMUN, and POWELL, JJ., joined, *post*, p. 647. REHNQUIST, J., filed a dissenting opinion, in which BURGER, C. J., joined, *post*, p. 652.

*Joel Lewittes* argued the cause for petitioner. On the brief were *Louis J. Lefkowitz,* Attorney General of New York, *Samuel A. Hirshowitz,* First Assistant Attorney General, and *Ralph L. McMurry,* Assistant Attorney General.

*Joseph E. Lynch,* by appointment of the Court, 423 U. S. 943, argued the cause and filed a brief for respondent.

MR. JUSTICE STEVENS delivered the opinion of the Court.

The question presented is whether a defendant may enter a voluntary plea of guilty to a charge of second-degree murder without being informed that intent to cause the death of his victim was an element of the offense.

The case arises out of a collateral attack on a judgment entered by a state trial court in Fulton County, N. Y., in 1965. Respondent, having been indicted on a charge of first-degree murder, pleaded guilty to second-degree murder and was sentenced to an indeterminate term of imprisonment of 25 years to life. He did not appeal.

In 1970, respondent initiated proceedings in the New York courts seeking to have his conviction vacated on

the ground that his plea of guilty was involuntary.[1] The state courts denied relief on the basis of the written record.[2] Having exhausted his state remedies,[3] in 1973, respondent filed a petition for writ of habeas corpus in the United States District Court for the Northern District of New York.[4] He alleged that his guilty plea was involuntary because he was not aware (1) of the sentence that might be imposed upon conviction of second-degree murder, or (2) that intent to cause death was an element of the offense. Based on the state-court record, the Federal District Court denied relief. The Court of Appeals reversed summarily and directed the District Court "to conduct an evidentiary hearing on the issues raised by petitioner, including whether, at the time of his entry of his guilty plea, he was aware that intent was an essential element of the crime and was advised of the scope of the punishment that might be imposed."

Upon remand the District Judge heard the testimony of several witnesses including respondent, the two lawyers who had represented him in 1965, the prosecutor,

---

[1] On August 7, 1970, he filed both a "Notice of Motion to Withdraw Guilty Plea" and a "Petition for Writ of Error Coram Nobis."

[2] The written record included the transcript of his original arraignment on the first-degree-murder charge on April 15, 1965, transcript of proceedings relating to the impaneling of a jury on June 7, 1965, transcript of the proceedings on June 8, 1965, when he pleaded guilty to second-degree murder, the sentencing hearing on June 15, 1965, an affidavit by the prosecutor, and certain psychological evaluations of respondent.

[3] The order denying his petition for a writ of error *coram nobis* was entered by the Trial Division of the Supreme Court of New York on May 29, 1971. On March 7, 1972, the Appellate Division affirmed without opinion, *People* v. *Morgan*, 38 App. Div. 2d 1012, 330 N. Y. S. 2d 1018; on July 6, 1972, the New York Court of Appeals denied permission to appeal.

[4] Federal jurisdiction was invoked under 28 U. S. C. § 2241 *et seq.*

and respondent's mother. In addition, the transcript of the relevant state-court proceedings and certain psychological evaluations of respondent were made a part of the record.

At the conclusion of the hearing, the District Court made only two specific findings of fact.[5]  First, contrary to respondent's testimony, the court expressly found that he was advised that a 25-year sentence would be imposed if he pleaded guilty.  Second, the court found that respondent "was not advised by counsel or court, at any time, that an intent to cause the death or a design to effect the death of the victim was an essential element of Murder 2nd degree."  On the basis of the latter finding, the District Court held "as a matter of law" that the plea of guilty was involuntary and had to be set aside.[6]

---

[5] Memorandum Decision and Order dated Oct. 29, 1974, pp. 4–5, App. 116a–117a.

[6] "In connection with petitioner's second claim however, I find that he was not advised by court or counsel prior to his plea of the elements required to be established for any degree of homicide nor was he aware of the same; particularly, I find that petitioner was not advised by counsel or court, at any time, that an intent to cause the death or a design to effect the death of the victim was an essential element of Murder 2nd degree.  As stated by the Supreme Court, 'a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.'  *McCarthy* v. *United States*, 394 U. S. 459, 466 (1969).  Based upon the foregoing, I hold as a matter of law that petitioner's plea of guilty was not intelligently or knowingly entered and was, therefore, involuntary.  Accordingly, petitioner's plea of guilty to Murder 2nd degree must be set aside as involuntary and unconstitutional."  The District Court ordered that respondent be discharged from custody "unless the State of New York takes such steps as are necessary to return [him] to Fulton County for rearraignment; said rearraignment is to be held within 60 days of the date hereof . . . ."  App. 117a–118a.

This holding was affirmed, without opinion, by the Court of Appeals.[7]

Before addressing the question whether the District Court correctly held the plea invalid as a matter of law, we review some of the facts developed at the evidentiary hearing.

## I

On April 6, 1965, respondent killed Mrs. Ada Francisco in her home.

When he was in seventh grade, respondent was committed to the Rome State School for Mental Defectives where he was classified as "retarded." He was released to become a farm laborer and ultimately went to work on Mrs. Francisco's farm. Following an argument, she threatened to return him to state custody. He then decided to abscond. During the night he entered Mrs. Francisco's bedroom with a knife, intending to collect his earned wages before leaving; she awoke, began to scream, and he stabbed her.[8] He took a small amount of money, fled in her car, and became involved in an accident about 80 miles away. The knife was found in the glove compartment of her car. He was promptly arrested and made a statement to the police. He was

---

[7] 516 F. 2d 897 (CA2 1975).

[8] At the evidentiary hearing in the District Court respondent's attorney testified:

"The Court: I inferred that he struck her, not cut her, didn't use the knife?

"The Witness: Not at first. She didn't stop screaming and then he used the knife many times. *He didn't tell me that,* but the allegation was that he hit her forty-five times with the knife." (Emphasis added.) App. 67a.

Apart from that hearsay, there is no evidence in the record to indicate whether the respondent struck or stabbed Mrs. Francisco many times. The indictment charged that respondent "stabbed and cut Ada Francisco with a dangerous knife, thereby inflicting divers wounds and injuries . . . ." *Id.,* at 85a.

then 19 years old and substantially below average intelligence.[9]

Respondent was indicted for first-degree murder and arraigned on April 15, 1965. Two concededly competent attorneys were appointed to represent him. The indictment, which charged that he "willfully" stabbed his victim, was read in open court. His lawyers requested, and were granted, access to his written statement and to earlier psychiatric reports. A new psychiatric examination was requested and ordered.

Respondent was found competent to stand trial. Defense counsel held a series of conferences with the prosecutors, with the respondent, and with members of his family. The lawyers "thought manslaughter first would satisfy the needs of justice."[10] They therefore endeavored to have the charge reduced to manslaughter, but the prosecution would agree to nothing less than second-degree murder and a minimum sentence of 25 years. The lawyers gave respondent advice about the different sentences which could be imposed for the different offenses, but, as the District Court found, did not explain the required element of intent.

On June 8, 1965, respondent appeared in court with his attorneys and entered a plea of guilty to murder in the second degree in full satisfaction of the first-degree murder charge made in the indictment. In direct colloquy with the trial judge respondent stated that his plea was based on the advice of his attorneys, that he understood he was accused of killing Mrs. Francisco in Fulton County, that he was waiving his right to a jury trial, and that he would be sent to prison. There was no discussion of the elements of the offense of second-de-

---

[9] His functioning I. Q. was reported by examiners as in the range between 68 and 72.

[10] *Id.*, at 52a.

gree murder, no indication that the nature of the offense had ever been discussed with respondent, and no reference of any kind to the requirement of intent to cause the death of the victim.

At the sentencing hearing a week later his lawyers made a statement explaining his version of the offense, particularly noting that respondent "meant no harm to that lady" when he entered her room with the knife.[11] The prosecutor disputed defense counsel's version of the matter, but did not discuss it in detail. After studying the probation officer's report, the trial judge pronounced sentence.

At the evidentiary hearing in the Federal District Court, respondent testified that he would not have pleaded guilty if he had known that an intent to cause

---

[11] The attorney described the incident, in part, in these words:

"He awakened Mrs. Francisco for the purpose of obtaining the money which was rightfully his, and which he had a right to. Of course it was an unusual hour to do it, but he had returned home late, and he had been threatened with that other thing on the part of Mrs. Francisco of returning him to the Rome School. So I assume, putting all of those factors together, the one idea in his mind was to take his money and get away as far as he could to avoid being transferred back.

"Now, Mrs. Francisco was awakened. Apparently he had stayed there in the house, and she had no fear of him because her bedroom was open. There was no door on it. No locks at all. So when he awakened her, instead of responding to him, she merely started to scream. Now, I assume if she had talked to him that night in a normal tone, this thing would never have happened. But the minute she screamed, of course with his uncontrollable and ungovernable temper, and the idea in mind of perhaps she may awaken the people who were living in the other apartment of the house—there was a man and his wife who were working there for Mrs. Francisco and living in the house—in order to stop the screaming and in the excitement and tension of it all, the assault occurred and as a result Mrs. Francisco met her death." Record on Appeal 32–33.

the death of his victim was an element of the offense of second-degree murder. The District Judge did not indicate whether or not he credited this testimony.[12]

## II

Petitioner contends that the District Court applied an unrealistically rigid rule of law. Instead of testing the voluntariness of a plea by determining whether a ritualistic litany of the formal legal elements of an offense was read to the defendant, petitioner argues that the court should examine the totality of the circumstances and determine whether the substance of the charge, as opposed to its technical elements, was conveyed to the accused. We do not disagree with the thrust of petitioner's argument, but we are persuaded that even under the test which he espouses, this judgment finding respondent guilty of second-degree murder was defective.

We assume, as petitioner argues, that the prosecutor had overwhelming evidence of guilt available. We also accept petitioner's characterization of the competence of respondent's counsel and of the wisdom of their advice to plead guilty to a charge of second-degree murder. Nevertheless, such a plea cannot support a judgment of

---

[12] Of course, respondent's testimony on this point was hypothetical. The lawyers were certainly familiar with the intent requirement and evidently were satisfied that the objective evidence available to the prosecutor was sufficiently strong that the requisite intent could be proved beyond a reasonable doubt; accordingly, had this precise issue been discussed with respondent, his lawyers no doubt would have persisted in their advice to plead guilty. It follows that even if respondent's testimony at the hearing was given in complete good faith, there is no way one can be sure that he would have refused to enter the plea following advice expressly including a discussion of this precise question. Indeed, we assume that he probably would have pleaded guilty anyway. Such an assumption is, however, an insufficient predicate for a conviction of second-degree murder.

guilt unless it was voluntary in a constitutional sense.[13] And clearly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Smith* v. *O'Grady,* 312 U. S. 329, 334.

The charge of second-degree murder was never formally made. Had it been made, it necessarily would have included a charge that respondent's assault was "committed with a design to effect the death of the person killed."[14] That element of the offense might have been proved by the objective evidence even if respondent's actual state of mind was consistent with innocence[15] or manslaughter.[16] But even if such a design to effect death would almost inevitably have been inferred from evidence that respondent repeatedly stabbed Mrs. Francisco, it is nevertheless also true that a jury

[13] A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, see, *e. g., Johnson* v. *Zerbst,* 304 U. S. 458, 464–465, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense. *Smith* v. *O'Grady,* 312 U. S. 329.

[14] In 1965 murder in the second degree was defined as follows by former New York Penal Law § 1046: "Such killing of a human being is murder in the second degree, when committed with a design to effect the death of the person killed, or of another, but without deliberation and premeditation."

[15] Although respondent was found competent to stand trial, that finding would not, of course, foreclose a defense of temporary insanity.

[16] The offense of manslaughter in the first degree was defined to include a killing "[i]n the heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon." See § 1050.

would not have been required to draw that inference.[17] The jury would have been entitled to accept defense counsel's appraisal of the incident as involving only manslaughter in the first degree. Therefore, an admission by respondent that he killed Mrs. Francisco does not necessarily also admit that he was guilty of second-degree murder.

There is nothing in this record that can serve as a substitute for either a finding after trial, or a voluntary admission, that respondent had the requisite intent. Defense counsel did not purport to stipulate to that fact; they did not explain to him that his plea would be an admission of that fact; and he made no factual statement or admission necessarily implying that he had such intent. In these circumstances it is impossible to conclude that his plea to the unexplained charge of second-degree murder was voluntary.

Petitioner argues that affirmance of the Court of Appeals will invite countless collateral attacks on judgments entered on pleas of guilty, since frequently the record will not contain a complete enumeration of the

---

[17] "The fact that the prisoner plunged this pointed knife into what he knew to be a vital part of the body must raise a presumption that he intended to take life. Its natural result would be to destroy life, and he must be presumed to have intended the natural consequence of his act just as if he had aimed at the heart of the deceased and fired a gun. It was not charged that the evidence was conclusive, but simply that it was presumptive, and it was left to the jury to determine the fact upon the evidence under the charge as given." *Thomas* v. *People,* 67 N. Y. 218, 225 (1876). "The intention may be inferred from the act, but this, in principle, is an inference of fact to be drawn by the jury, and not an implication of law to be applied by the court." *Stokes* v. *People,* 53 N. Y. 164, 179 (1873). "[The] jury has the right to find from the results produced an intention to effect it." *People* v. *Cooke,* 292 N. Y. 185, 189, 54 N. E. 2d 357, 359 (1944). "[T]he jury was not bound to presume an intent to kill from the intentional stabbing." *Id.,* at 190, 54 N. E. 2d, at 360.

elements of the offense to which an accused person pleads guilty.[18]   We think petitioner's fears are exaggerated.

Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused.   Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.   This case is unique because the trial judge found as a fact that the element of intent was not explained to respondent.   Moreover, respondent's unusually low mental capacity provides a reasonable explanation for counsel's oversight; it also forecloses the conclusion that the error was harmless beyond a reasonable doubt, for it lends at least a modicum of credibility to defense counsel's appraisal of the homicide as a manslaughter rather than a murder.

Since respondent did not receive adequate notice of the offense to which he pleaded guilty, his plea was involuntary and the judgment of conviction was entered without due process of law.

*Affirmed.*

MR. JUSTICE WHITE, with whom MR. JUSTICE STEWART, MR. JUSTICE BLACKMUN, and MR. JUSTICE POWELL join, concurring.

There are essentially two ways under our system of criminal justice in which the factual guilt of a defendant may be established such that he may be deprived of his

---

[18] There is no need in this case to decide whether notice of the true nature, or substance, of a charge always requires a description of every element of the offense; we assume it does not.   Nevertheless, intent is such a critical element of the offense of second-degree murder that notice of that element is required.

liberty consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The first is by a verdict of a jury which, or a decision of a judge who, concludes after trial that the elements of the crime have been proved beyond a reasonable doubt. The second is by the defendant's own solemn admission "in open court that he is *in fact guilty* of the offense with which he is charged," *Tollett* v. *Henderson*, 411 U. S. 258, 267 (1973) (emphasis added), *i. e.*, by a plea of guilty. The Court has repeatedly emphasized that "a guilty plea for federal purposes is a judicial *admission of guilt* conclusively establishing a defendant's factual guilt." *Lefkowitz* v. *Newsome*, 420 U. S. 283, 299 (1975) (WHITE, J., dissenting) (emphasis added). We said in *Brady* v. *United States*, 397 U. S. 742, 748 (1970), that "central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment." In *McMann* v. *Richardson*, 397 U. S. 759, 773 (1970), we said that the defendant who pleads guilty is "convicted on his counseled admission in open court that he committed the crime charged against him"; and that "[a] conviction after a plea of guilty *normally* rests on the defendant's own admission in open court that he committed the acts with which he is charged." *Id.*, at 766.[1] (Emphasis added.)

---

[1] There exists what may be viewed as a third method of establishing a defendant's factual guilt. We have permitted judgment to be entered against a defendant on his intelligent plea of guilty accompanied by a claim of innocence. We said in *North Carolina* v. *Alford*, 400 U. S. 25, 37 (1970):

"[W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly

The problem in this case is that the defendant's guilt has been established neither by a finding of guilt beyond a reasonable doubt after trial nor by the defendant's own admission that he is in fact guilty. The defendant did not expressly admit that he intended the victim's death (such intent being an element of the crime for which he stands convicted); and his plea of guilty cannot be construed as an implied admission that he intended her death because the District Court has found that he was not told and did not know that intent to kill was an element of the offense with which he was charged.[2]

consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."

We held that where "a defendant *intelligently* concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt" a plea may be accepted even if accompanied by protestations of innocence. *Ibid.* (Emphasis added.) However, in that case the defendant pleaded guilty to second-degree murder after acknowledging that his "counsel had informed him of the difference between second- and first-degree murder." *Id.*, at 28–29. *Alford* is based on the fact that the defendant could intelligently have concluded that, whether he believed himself to be innocent and whether he could bring himself to admit guilt or not, the State's case against him was so strong that he would have been convicted anyway. Since such a defendant has every incentive to conclude otherwise, such a decision made after consultation with counsel is viewed as a sufficiently reliable substitute for a jury verdict that a judgment may be entered against the defendant. Plainly, a defendant cannot "intelligently" reach that conclusion if he does not know the elements of the crime to which he is pleading and therefore does not know what the State has to prove; and his ignorant decision to plead guilty under such circumstances is not a reliable indication that he is in fact guilty.

[2] This case is unusual in that the offense to which the defendant pleaded was not charged in the indictment. The indictment charged first-degree murder. The defendant pleaded guilty to the included offense of second-degree murder, the elements of which were not set forth in any document which had been read to the

Accordingly, the best that can be said for the judgment of conviction entered against the defendant is that it rests on strong evidence—never presented to a trier of fact—or that it rests on the judgment of his lawyer that he would probably be convicted of second-degree murder if he went to trial. It should hardly need saying that a judgment of conviction cannot be entered against a defendant no matter how strong the evidence is against him, unless that evidence has been presented to a jury (or a judge, if a jury is waived) and unless the jury (or judge) finds from that evidence that the defendant's guilt has been proved beyond a reasonable doubt. It cannot be "harmless error" wholly to deny a defendant a jury trial on one or all elements of the offense with which he is charged. Similarly, it is too late in the day to permit a guilty plea to be entered against a defendant solely on the consent of the defendant's agent—his lawyer. Our cases make absolutely clear that the choice to plead guilty must be the defendant's: it is *he* who must be informed of the consequences of his plea and what it is that he waives when he pleads, *Boykin* v. *Alabama,* 395 U. S. 238 (1969); and it is on his admission that he is in fact guilty that his conviction will rest.

In this case the defendant's factual guilt of second-degree murder has never been established in any fashion permitted by the Due Process Clause of the Fourteenth Amendment.

The dissent concedes that the conviction in this case was entered in violation of the United States Constitu-

---

defendant or to which he had access. See *McCarthy* v. *United States,* 394 U. S. 459, 467 n. 20 (1969). In those cases in which the indictment is read to the defendant by the court at arraignment or at the time of his plea, his plea of guilty may well be deemed a factual admission that he did what he is charged with doing so that a judgment of conviction may validly be entered against him.

tion. The dissent argues, however, that to set this defendant's conviction aside is to apply a new constitutional rule retroactively. The argument was not made by the petitioner in this case and is, in any event, untenable. In order to escape application of a constitutional rule to a particular criminal case, on nonretroactivity grounds, the State must point to a judicial decision occurring after the operative facts of the case in question clearly establishing the rule. The constitutional rule relevant to this case is that the defendant's guilt is not deemed established by entry of a guilty plea, unless he either admits that he committed the crime charged, or enters his plea knowing what the elements of the crime charged are. If this is a new rule, created since the defendant entered his plea, I am at a loss to know what case, other than this one, established it. *McCarthy* v. *United States,* 394 U. S. 459 (1969), did not do so. That case involved only a construction of Fed. Rule Crim. Proc. 11, and has no application to the States. *Boykin* v. *Alabama, supra,* did not do so. It does not mention the method of establishing the defendant's factual guilt. The only case which arguably addresses the issue in this case is *Brady* v. *United States,* 397 U. S. 742, 749 n. 6, which observed in dictum: "[T]he importance of assuring that a defendant does not plead guilty except with a full understanding of the charges against him . . . was at the heart of our recent decisions in *McCarthy* v. *United States, supra,* and *Boykin* v. *Alabama,* 395 U. S. 238 (1969)." However, new rules of constitutional law are not established in dicta in footnotes. Either a new constitutional rule is being established in *this* case— in which event we will have to address at some future time the question whether this rule is retroactive—or, as I believe to be true, this case rests on the long-accepted principle that a guilty plea must provide a

trustworthy basis for believing that the defendant is in fact guilty. If so, then the principle will and should govern all similar cases presented to us in the future. In any event, the judgment of the court below should be affirmed, and I join the opinion of the Court.

Mr. Justice Rehnquist, with whom The Chief Justice joins, dissenting.

The Court's opinion affirms a judgment which directs the release on federal habeas of a state prisoner who, on advice of counsel, pleaded guilty in the New York State courts 11 years ago to a charge of second-degree murder. The Court declares its agreement with petitioner's contention that the test for reviewing the constitutional validity of a counseled plea of guilty should be "the totality of the circumstances," *ante,* at 644. But the Court's holding can be justified only if the Constitution requires that "a ritualistic litany of the formal legal elements of an offense [be] read to the defendant," *ibid.,* a requirement which it purports to eschew.[1] The Court accomplishes this result by imposing on state courts, as a constitutional requirement, a definition of "voluntariness" announced by this Court in *McCarthy* v. *United States,* 394 U. S. 459 (1969), in which the Court interpreted a provision of the Federal Rules of Criminal Procedure. Yet that case has been held to have only prospective application even as to the federal courts. *Halliday* v. *United States,* 394 U. S. 831 (1969).

*McCarthy* extended the definition of voluntariness to include an "understanding of the essential elements of the crime charged, including the requirement of specific

---

[1] Admittedly the Court does not require that this litany be performed on the record, but the requirement that it be performed at some point in the proceedings, whether by counsel or by the court, is clear.

intent . . . ," 394 U. S., at 471. But prior to *McCarthy,* and to this Court's decision of a related issue in *Boykin* v. *Alabama,* 395 U. S. 238 (1969), the generally accepted standard for a valid guilty plea in federal courts was set forth in *Machibroda* v. *United States,* 368 U. S. 487, 493 (1962), which in turn relied on *Kercheval* v. *United States,* 274 U. S. 220, 223 (1927). Though these were federal cases, certainly no more stringent a standard could be applied as a matter of constitutional law on federal habeas review of state convictions. The Court said in *Machibroda:*

> " 'Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.' " 368 U. S., at 493, quoting *Kercheval, supra,* at 223.

These cases thus set forth a three-pronged test: The plea of guilty must be made voluntarily, it must be made after proper advice, and it must be made with full understanding of the consequences. There can be no doubt that respondent entered his plea "with full understanding of the consequences" because the District Court expressly so found. Nor can there be any serious doubt that respondent's plea was made "voluntarily" as that term is used in *Machibroda* and the previous cases upon which it relies.

There was no contention in the federal habeas court that respondent's guilty plea was not "voluntary" in the normal sense of that word. There was no hint of physical or psychological coercion, and respondent was represented by not one but two admittedly capable defense attorneys. While *McCarthy* v. *United States, supra,* at 471, expands the notion of "voluntariness" to include the concept that a defendant must have an "understanding

of the essential elements of the crime charged, including the requirement of specific intent . . . ," in order for a plea in the federal courts to be valid under Fed. Rule Crim. Proc. 11, that decision was held prospective only in *Halliday, supra.* Even had it not been, Rule 11 by its terms applies only to proceedings in federal courts.

A perusal of cases in the Courts of Appeals decided before *McCarthy, supra,* and *Boykin, supra,* indicates that, at least in the case where the defendant is counseled, there was no requirement that every element of the offense be explained to or admitted by the defendant [2] or even in every case that the consequences of the plea be enunciated. *E. g., United States* v. *Cariola,* 323 F. 2d 180 (CA3 1963); *McGrady* v. *Cunningham,* 296 F. 2d 600 (CA4 1961), cert. denied, 369 U. S. 855 (1962); *Kennedy* v. *United States,* 259 F. 2d 883 (CA5 1958), cert. denied, 359 U. S. 994 (1959); *United States* v. *Swaggerty,* 218 F. 2d 875 (CA7), cert. denied, 349 U. S. 959 (1955); see discussion in *Halliday, supra,* at 833. Thus, unless the Court intends to establish a new and far more stringent standard for all guilty pleas entered before the 1969 decisions of this Court in *Boykin* and *McCarthy,* respondent's plea was "voluntary" as that term was understood before the decisions in those cases.[3]

---

[2] The Court disclaims such a holding. *Ante,* at 647 n. 18. However, by holding that intent was a "critical element" here which must be described to the defendant the Court has accomplished the same effect, for every crime requires an intent and it is no more "critical" an element in this case than in any other. Indeed, it would seem to be far less significant here because it could have been presumed by the jury without any specific proof.

[3] In *Brady* v. *United States,* 397 U. S. 742, 755 (1970), the Court, in dealing with a pre-*McCarthy* guilty plea held that the "standard as to the voluntariness of guilty pleas" is that " ' "[A] plea of guilty entered by one fully aware of the direct consequences, including the

But the Court refers to "voluntary in a constitutional sense" stating that the term includes the requirement of " 'real notice of the true nature of the . . .' charge," *ante,* at 645, citing the pre-*Boykin* case of *Smith* v. *O'Grady,* 312 U. S. 329 (1941). *Smith* involved an "uneducated" defendant "without counsel, bewildered by court processes strange and unfamiliar to him, and inveigled by false statements of state law enforcement officers into entering a plea of guilty." *Id.,* at 334. The Court further observed that Smith's plea was involuntary because he had not received any "real notice of the true nature of the charge against him." *Ibid.* That is, he was told he was pleading to "simple burglary" and would receive a 3-year sentence when in fact he was tricked into pleading to "burglary with explosives" and was sentenced to 20 years. Thus the "notice" required by *Smith* is accurate information as to the offense and sentence to which one is pleading, which respondent received.

Since it seems clear under the foregoing analysis that respondent's plea was "voluntarily made," and since it is undisputed that it was made with full understanding of its consequences, the only remaining issue is whether he was "properly advised," as that term is used in *Machibroda, supra.* This inquiry, in turn, depends upon the sort of advice reasonably competent counsel would have been expected to give him, see *Brady* v. *United States,* 397 U. S. 742, 756–757 (1970), and *McMann* v. *Richardson,* 397 U. S. 759, 770 (1970). Thus the test

actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g., bribes)." ' " (Citation omitted.)

to be applied is not whether respondent's attorneys mechanically recited to him the elements of the crime with which he was charged as those elements would have been set forth in black letter law in a criminal law hornbook, but rather it is a test based on the practices of reasonably competent attorneys experienced in the day-to-day business of representing criminal defendants in a trial court.

The Court states that it "accept[s] petitioner's characterization of the competence of respondent's counsel and of the wisdom of their advice to plead guilty to a charge of second-degree murder." *Ante,* at 644.

In *McMann, supra,* the Court held that the requirement that a guilty plea be intelligently made "is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a postconviction hearing." 397 U. S., at 770. In this case, counsel advised their client as to the penalty for second-degree murder but did not go into "detail" as to the differences between first- and second-degree murder, believing that their client would not be interested. App. 57a. Now, 11 years later, this Court concludes that counsel's decision was an error of constitutional magnitude.

Respondent was originally indicted for the crime of first-degree murder, and that indictment charged that in April 1965, he had "willfully, feloniously and of malice aforethought, stabbed and cut Ada Francisco with a dangerous knife . . . and that thereafter . . . the said Ada Francisco died of said wounds and injuries, said killing being inexcusable and unjustifiable." *Id.,* at 85a. Respondent's attorney at the habeas hearing testified that respondent had stabbed his victim "many times" (*id.,* at 67a), which suggests that experienced counsel would not consider the "design to effect death" issue to be in serious dispute. The habeas judge, in deciding that there was a

factual basis for the entry of the plea, took much the same approach when he observed:

"The Court: Well the intent, I think there is a factual basis from the evidence where it, that is the jury would have a right to infer on the mere fact, I think when he hit her first and then used the knife, that there were multiple knife wounds, that the jury could infer, and as a matter of fact, I think from those same facts the Judge would have to permit the jury to decide as a question of fact whether there was premeditation on first degree murder, so that this man was a long way short of being out of the woods.

"So I am satisfied that there was a factual basis for the entry of the plea." *Id.,* at 78a.

I do not see how this Court, or any court, could conclude on this state of the record that respondent was not "properly advised" at the time he entered his plea of guilty to the charge of second-degree murder.

His attorneys were motivated by the eminently reasonable tactical judgment on their part that he should plead guilty to second-degree murder in order to avoid the possibility of conviction for first-degree murder with its more serious attendant penalties. Since the Court concedes both the competence of respondent's counsel and the wisdom of their advice, that should be the end of the matter.

There are intimations in the Court's opinion that the vice which it finds in the guilty plea is not that respondent was not *informed* of all the elements of the offense, but that instead he did not *admit* to all of those elements. *Ante,* at 646. But it is quite clear under our decision in *North Carolina* v. *Alford,* 400 U. S. 25 (1970), that the latter fact, standing alone, is not sufficient to invalidate a guilty plea. In *Alford* the defend-

ant not only was not asked to admit to a certain element of the offense, as here, but affirmatively *denied* having committed the crime at all. Yet we upheld the guilty plea because, as here, it was a tactically sound decision for the defendant to plead to second-degree murder in order to escape the greater penalties which might result from a first-degree murder conviction. In *Alford* we placed great weight on the fact that, as in this case, "the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage." *Id.,* at 31.

Thus the fact, relied upon by the Court, *ante,* at 645–646, that a jury would not have been *required* to infer the requisite intent from the facts admitted at the guilty plea is not significant. Alford, at his guilty plea, presented a complete defense to the crime by stating that he had not shot anyone. 400 U. S., at 28 n. 2. Respondent admitted the stabbing but made no statement as to his intent. Even if he had *denied* the intent, this plea would be valid under *Alford.*

The "totality of the circumstances" in this case shows that respondent pleaded guilty to second-degree murder upon the advice of competent counsel. His plea was in no way the result of physical or psychological coercion or overreaching by the State, and he was fully advised as to the consequences of that plea. True, he was not expressly advised that the "design to effect death" was an element of the offense to which he was pleading, although the original first-degree-murder indictment charging "malice aforethought" had been read to him. Given the finding of the habeas judge that there was more than ample evidence from which the jury could have found that respondent had the requisite intent, I cannot subscribe to the Court's invalidation of his pre-1969 guilty plea for such an extremely technical defect.

In adopting the rule it does, the Court opens the door to countless similarly situated prisoners to withdraw their guilty pleas many years after they were entered. Since it is unlikely that prosecutors will be able to reassemble witnesses and evidence at this late date to try these prisoners, the practical effect of the Court's ruling will be to release these prisoners who at one time freely admitted their guilt.