914 So.2d 1256 (2005)
Tyrone Latrell GRAHAM, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-CP-00502-COA.
Court of Appeals of Mississippi.
November 22, 2005.
*1257 Tyrone Latrell Graham, Appellant, pro se.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
Before LEE, P.J., GRIFFIS and ISHEE, JJ.
GRIFFIS, J., for the Court.
¶ 1. Tyrone Latrell Graham, along with his brother Sidney Antonio Graham, was indicted in September 1999 for aggravated assault with a deadly weapon, in violation of Mississippi Code Annotated Section 97-3-7 (Rev.2000), and capital murder, in violation of Mississippi Code Annotated Section 97-3-19 (Rev.2000). On June 8, 2001, Tyrone pled guilty to aggravated assault and a reduced charge of manslaughter. He was sentenced to serve five years for aggravated assault and twenty years for manslaughter, with said sentences to run consecutively, for a total of twenty-five years, in the Mississippi Department of Corrections.
¶ 2. Tyrone filed a motion for post-conviction relief, which was denied by the trial court. On appeal, Tyrone asserts the following errors: (1) his guilty plea was not knowingly, voluntarily and intelligently entered, (2) the evidence does not support his guilt, (3) his indictment is defective, and (4) he received ineffective assistance of counsel. We find no error and affirm.

STANDARD OF REVIEW
¶ 3. In reviewing a trial court's decision to deny a motion for post-conviction relief, the standard of review is clear. The trial court's denial will not be reversed absent a finding that the trial court's decision was clearly erroneous. Smith v. State, 806 So.2d 1148, 1150(¶ 3) (Miss.Ct. App.2002).

*1258 ANALYSIS

I. Was Tyrone's guilty plea knowingly, voluntarily, and intelligently entered?
¶ 4. Tyrone claims that he was never explained the elements of the aggravated assault and manslaughter charges to which he pled guilty. He contends that, as a result, his guilty plea was not knowingly, voluntarily, or intelligently entered. In support of his argument, Tyrone relies on Henderson v. Morgan, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). In Henderson, the Supreme Court acknowledged that "a plea cannot support a judgment of guilt unless it was voluntary in a constitutional sense." Id. at 645, 96 S.Ct. 2253. The Court found that a plea could not be voluntary in the sense that it constituted an intelligent admission unless the defendant received "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." Id. (citing Smith v. O'Grady, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859 (1941)).
¶ 5. It is an appellant's duty to justify his arguments of error with a proper record, which does not include mere assertions in his brief, or the trial court will be considered correct. Am. Fire Prot., Inc. v. Lewis, 653 So.2d 1387, 1390 (Miss.1995). Facts alleged to exist by Tyrone must be proved and placed before this Court by a certified record as required by law; otherwise, we cannot know of their existence. Phillips v. State, 421 So.2d 476, 478 (Miss.1982). While Tyrone's allegations may be true, the record is contrary to this allegation.
¶ 6. According to the guilty plea transcript, the following colloquy occurred:
Q. Do you understand that you are under oath at this time and the answers you will be giving the Court to the questions that will be asked of you will be sworn answers under penalty of perjury for any false answer that you may give?
A. Right.
Q. Have you had an opportunity to read and understand the petition to enter a plea of guilty which you have signed and presented to the Court which I am now showing you?
A. Yes.
Q. Did you understand that you were swearing to the facts set forth in that petition also under penalty of perjury for any false statements that might be contained therein?
A. Yes.
Q. Have you had an opportunity to fully discuss the facts and circumstances surrounding these offenses with your attorney?
A. Yes.
Q. Did you tell him all of those facts that you feel might be necessary for your defense in this case?
A. Yes.
Q. Did your discussion with him include the elements of the crime or offense with which you are charged?
A. Yes.
Q. After your discussion with him are you the one that decided to plead guilty to each charge?
A. Yes.
Q. Have any promises been made to you or any hope of reward in return for you changing your plea from not guilty to guilty?
A. No.
Q. Any threats been made against you, any use of force or any type of intimidation which might have caused you to change your plea from not guilty to guilty?

*1259 A. No.
Q. Are you telling the Court that you are freely and voluntarily admitting your guilt to each of the offenses with which you are charged?
A. Yes.
¶ 7. From this record, Graham's guilty plea was indeed knowingly, voluntarily, and intelligently entered. Thus, we find no error.

II. Does the evidence support Tyrone's guilt?
¶ 8. Tyrone argues that he should not have been indicted with his brother for the crimes of aggravated assault and capital murder and asserts that he is innocent. However, Tyrone pled guilty to aggravated assault and a reduced charge of manslaughter. The question of a defendant's actual guilt cannot be litigated on appeal from a denial of post-conviction relief after the defendant pled guilty, unless the defendant can show that the guilty plea was not knowingly, voluntarily, or intelligently entered. See Henderson, 426 U.S. at 645, 96 S.Ct. 2253. As discussed above, Tyrone failed to show that he was entitled to such relief. Furthermore, any person who is present at the commission of a criminal offense and aids, counsels or encourages another in the commission of that offense is equally guilty. Hoops v. State, 681 So.2d 521, 533 (Miss. 1996).
¶ 9. According to the guilty plea transcript, the prosecutor was asked to describe the factual basis of the charges, and she responded:
Your Honor, if this case were to go to trial the state would be prepared to prove on the evening of Thursday, April 24, 1997, this defendant, along with one Christopher Buckhalter, Sidney Graham, and Anthony Sanders went to rob Leonard McInnis and Jason Langley....
During the robbery, Mr. McInnis was shot but managed to escape. Langley, unfortunately, did not escape. He was killed when his throat was severely slashed.
McInnis told police all four men carried guns and demanded money and drugs from the victims. Christopher Buckhalter was identified by Mr. McInnis and later entered a plea in August of 1999 in exchange for his help in identifying the others involved.
Anthony Sanders, one of the others involved, was killed a few months after this crime.
Buckhalter named Tyrone and Sidney Graham as the other two people involved. Tyrone was then subsequently interviewed by police and confessed that Sanders and Buckhalter set up the robbery and he and Sidney willingly participated. He admitted tying up Langley's hands during the robbery and also admitted to cutting his throat after Sanders had already done so. Tyrone also received a portion of the money stolen in the robbery.

The Court then asked:
Q. You have heard the factual basis which the district attorney's office states would be the proof should either of your cases go to trial. Do you have any disagreement with either of those statements?
A. No.
¶ 10. Even by his own argument, Tyrone is responsible for the crimes committed. Therefore, this issue lacks merit.

III. Is Tyrone's indictment defective?
¶ 11. Tyrone contends that his indictment was defective because it charged him with capital murder and not manslaughter. *1260 He also argues that it was defective because it charged him as an habitual offender. Tyrone is correct that the indictment charged him with capital murder. The charge of capital murder was reduced to manslaughter through the plea agreement. Also, contrary to Tyrone's assertion, the indictment does not state that Tyrone was charged as an habitual offender. Instead, his brother, Sidney Antonio Graham, was charged as an habitual offender. Thus, this issue is without merit.

IV. Did Tyrone receive ineffective assistance of counsel?
¶ 12. The standard applied to claims of ineffective assistance of counsel were first articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove ineffective assistance of counsel, Tyrone must demonstrate that his counsel's performance was deficient and that this deficiency prejudiced his defense. Id. at 687, 104 S.Ct. 2052. The burden of proof rests with Tyrone. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). Under Strickland, there is a strong presumption that counsel's performance falls within the range of reasonable professional assistance. Strickland, 466 U.S. at 694, 104 S.Ct. 2052. To overcome this presumption, "the defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result would have been different." Id.
¶ 13. Tyrone claims his counsel pressured him to plead guilty to aggravated assault and to a reduced charge of manslaughter. The plea transcript belies this argument.
¶ 14. Tyrone further claims that his counsel was deficient in failing to assert Tyrone's right to a competency hearing prior to his guilty plea. The record does contain an agreed order by the trial court to transfer Tyrone to the Mississippi State Hospital for a mental evaluation. However, we have no information of the outcome of this evaluation. Because Tyrone failed to support his assertions of ineffective assistance of counsel in the record, we must infer that his counsel acted effectively.
¶ 15. Upon review, we find that the Circuit Court of Hinds County was correct to deny Tyrone's motion for post-conviction relief and therefore affirm.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY DENYING TYRONE LATRELL GRAHAM'S MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, IRVING, CHANDLER, BARNES AND ISHEE, JJ., CONCUR.