OPINION
{¶ 1} Defendant-appellant, Ramon Hernandez, appeals from the judgment of the Franklin County Court of Common Pleas, pursuant to a guilty plea, finding him guilty of engaging in a pattern of corrupt activity, a first degree felony, in violation of R.C.2923.32, trafficking in cocaine, a third degree felony, in violation of R.C. 2925.03, three counts of aggravated trafficking in drugs, a second degree felony, in violation of R.C. 2925.03, and one count of trafficking in marijuana, a third degree felony, in violation of R.C. 2925.03. The trial court sentenced defendant to a total of 13 years plus five years of post-release control sanctions.
 {¶ 2} On February 3, 2005, defendant filed a pro se motion for delayed appeal, arguing that counsel was ineffective for failing to file a timely notice of appeal. This court granted defendant's motion for delayed appeal, and defendant sets forth the following assignments of error for this court's consideration:
First Assignment of Error
THE TRIAL COURT ERRED IN IMPOSING NON-MINIMUM SENTENCES ON A FIRST-TIME OFFENDER WITHOUT MAKING THE OBLIGATORY FINDINGS AT THE SENTENCING HEARING.
Second Assignment of Error
THE TRIAL COURT'S IMPOSITION OF NON-MINIMUM SENTENCES VIOLATED THE DEFENDANT'S FEDERAL CONSTITUTIONAL RIGHTS TO HAVE A JURY DETERMINE BEYOND A REASONABLE DOUBT ALL FACTS LEGALLY ESSENTIAL TO HIS SENTENCE.
Third Assignment of Error
THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT TO CONSECUTIVE TERMS, WHERE A CONTRACTUAL AGREEMENT HAD BEEN REACHED BY ALL PARTIES, WHICH DID NOT STIPULATE TO THE POSSIBILITY OF THE IMPOSITION OF CONSECUTIVE TERMS OF INCARCERATION.
Fourth Assignment of Error
THE TRIAL COURT ERRED AS A MATTER OF LAW AND TO THE PREJUDICE OF THE DEFENDANT BY FAILING TO ASCERTAIN IN ANY MANNER IF HE UNDERSTOOD THE NATURE OF THE CHARGES AS IS REQUIRED BY CRIMINAL RULE 11(C)(2)(A), OHIO RULES OF CRIMINAL PROCEDURE AND CONCEPTS OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
 {¶ 3} The facts surrounding defendant's arrest were summarized by the state at the October 31, 2003 hearing:
[PROSECUTOR]: FIRST, IN CASE NO. 02CR-6905, AS TO COUNT NINE, ON JULY 5, 2002, APPROXIMATELY AT ELEVEN P.M., UNDERCOVER NARCOTICS DETECTIVES WENT TO THE AREA OF 4825 KINGSHILL DRIVE, APARTMENT 305, TO PURCHASE COCAINE. WHEN THEY ARRIVED THERE, THEY MET WITH THE CO-DEFENDANT, ALBERTO MARQUEZ. THEY MADE ARRANGEMENTS FOR PURCHASES OF TWO OUNCES OF COCAINE WITH 15 HUNDRED DOLLARS IN OFFICIAL CITY FUNDS. THEY WERE MET BY MR. MARQUEZ. HE STATED TO THEM THAT HE ONLY HAD ONE OUNCE OF COCAINE BUT HE HAD SENT RAMON HERNANDEZ TO PICK UP THE OTHER ONE, AND HE WOULD BE BACK IN TEN MINUTES. DETECTIVES PROCEEDED UP TO HIS APARTMENT. THE CO-DEFENDANT, BY THE NAME OF RYAN SNOW WAS ALSO THERE. THEY WEIGHED OUT THE OUNCE, WHICH MR. MARQUEZ HAD, AND A SHORT TIME LATER MR. HERNANDEZ SHOWED UP WITH TWO OTHER UNKNOWN INDIVIDUALS, REACHED INTO HIS LEFT FRONT PANTS POCKET AND PULLED OUT ANOTHER OUNCE OF COCAINE, GIVING IT TO MR. MARQUEZ. THIS WAS ALSO WEIGHED OUT AND GIVEN TO THE UNDERCOVER NARCOTICS DETECTIVES FOR 15 HUNDRED DOLLARS IN CASH. THIS WAS TESTED AND FOUND TO BE 69.1 GRAM TOTAL OF COCAINE.
IN COUNT 15, ON AUGUST 20, '02, UNDERCOVER NARCOTICS DETECTIVES PROCEEDED TO THE AREA OF 161 AND MAPLE CANYON, TO A CVS PARKING LOT TO MAKE A DIRECT PURCHASE OF A HUNDRED DOSES OF ECSTASY FROM THIS DEFENDANT FOR 12 HUNDRED DOLLARS. THEY CONTACTED THIS DEFENDANT. HE STATED THAT THE CO-DEFENDANT, FREDDIE CELDANO, HAD DRUGS AND TO CALL HIM. THEY CALLED FREDDIE AND WERE TOLD TO GO TO THE RUSH CREEK SPORTS BAR, 6150 SUNBURY ROAD. THE DETECTIVES PROCEEDED TO THE AREA AND OBSERVED FREDDIE CELDANO AND HARRY CELDANO AT THE BAR. HE BEGAN TALKED [sic] WITH THEM ABOUT THE TRANSACTION. FREDDIE INDICATED TO THE DETECTIVES THAT RYAN SNOW WAS ON HIS WAY WITH THE DRUGS. RYAN DID ARRIVE. THEY WENT TO THE RESTROOM OF THE BAR, AT WHICH TIME RYAN SNOW PRODUCED AN OUNCE OF COCAINE. THE DETECTIVES INDICATED THAT THEY WANTED ECSTASY, NOT COCAINE, AND THESE INDIVIDUALS WENT BACK OUT AND SPOKE WITH FREDDIE CELDANO, AND HE CONTACTED RAMON HERNANDEZ. AND A SHORT TIME LATER, MR. HERNANDEZ AND LEWIS TOREZ ARRIVED AT THE BAR. THEY WENT TO THE BACK TO THE RESTROOM, AT WHICH TIME THE DEFENDANT COUNTED OUT 100 UNIT DOSES OF ECSTASY AND SOLD THEM TO THE OFFICER FOR 12 HUNDRED DOLLARS OF OFFICIAL CITY FUNDS.
JUST TO NOTE, THE COCAINE WHICH RYAN SNOW HAD BROUGHT THEM BY MISTAKE WAS ALSO SOLD TO THE OFFICERS AT THAT TIME.
YOUR HONOR, WOULD THIS CASE HAVE GONE TO TRIAL AS RELATES TO COUNT ONE, THE STATE WOULD HAVE PRESENTED INTO EVIDENCE THAT THIS DEFENDANT AND FOUR OTHER DEFENDANTS NAMED IN THAT INDICTMENT, FREDDIE CELDANO, HARRY CELDANO, ALBERTO MARQUEZ AND RYAN SNOW HAD ENGAGED IN A PATTERN OF CORRUPT ACTIVITY, NAMELY, THE SELLING OF COCAINE AND ECSTASY IN LARGE AMOUNTS ON NUMEROUS OCCASIONS, AS SET FORTH BY THE PREDICATE OFFENSES IN THE INDICTMENT.
THE STATE WOULD HAVE PRESENTED TESTIMONY AS TO STATEMENTS MADE BY SEVERAL INDIVIDUALS INVOLVED IN THIS ORGANIZATION RELATING TO THE STRUCTURE OF THE ORGANIZATION AND TO THE FACT THAT GENERALLY, LARGE SALES WERE TO BE MADE BY FREDDIE AND HARRY, MID-LEVEL SALES BY RAMON, AND ALBERTO MARQUEZ AND RYAN SNOW, BASICALLY, HANDLED THE SMALL END STUFF. THESE WERE STATEMENTS MADE TO OFFICERS BY THESE INDIVIDUALS INVOLVED IN THIS ORGANIZATION.
ADDITIONALLY, AS NOTED IN THESE TWO CASES, WHEN SALES WERE BEING MADE, TELEPHONE CONTACTS WERE GOING BACK AND FORTH BETWEEN THESE INDIVIDUALS AND THE INDIVIDUALS WERE NUMEROUSLY INVOLVED IN EACH OTHER'S SALES, SUPPLYING EACH OTHER AND BRINGING ADDITIONAL AMOUNTS IF NEEDED.
IN CASE NO. 03CR-4055, ON JUNE 4, THE DEFENDANT SOLD 100 UNIT DOSES OF ECSTASY FOR $920 TO A CONFIDENTIAL INFORMANT. THIS OCCURRED OUTSIDE THE PARKING LOT OUTSIDE OF 1712 GRANITE WAY LANE. AT THAT TIME THE DEFENDANT INDICATED TO THE CONFIDENTIAL INFORMANT THAT HE HAD SOME MEXICAN FRIENDS IN FROM ARIZONA STAYING IN A HOTEL, AND THEY HAD 50 POUNDS OF MARIJUANA FOR SALE FOR $45,000. HE INDICATED THAT HE COULD PURCHASE ADDITIONAL QUANTITIES OF ECSTASY AND 50,000 IN MARIJUANA THE FOLLOWING DAY. ON JUNE 5, '03, CONFIDENTIAL INFORMANT AGAIN MET THE DEFENDANT AT A BAR ON TAMARACK CIRCLE, COLUMBUS. HE WAS INSTRUCTED TO GO TO THE BEST WESTERN HOTEL AT 88 EAST DUBLIN-GRANVILLE ROAD. UPON HIS ARRIVAL, HE WAS INTRODUCED TO A JUAN VAZQUEZ, SERGIO ESCOBAR AND FERNANDO CASTILLO. THEY ALL SPOKE WITH A CONFIDENTIAL INFORMANT, INDICATING THEY COULD SUPPLY ADDITIONAL QUANTITITES OF MARIJUANA AND, ALSO COCAINE. HE INDICATED HE WAS STILL INTERESTED IN PURCHASING 50 POUNDS OF MARIJUANA AND ECSTASY.
THE CONVERSATION ENDED IN THE DEFENDANT INSTRUCTING THE INFORMANT TO DRIVE TO 1712 GRANITE LANE. AFTER ARRIVING THERE, THE DEFENDANT BRIEFLY WENT INTO THE RESIDENCE, RETURNED SHORTLY LATER AND WENT BACK TO THE HOTEL. WHILE THE INFORMANT WAS INSIDE THE ROOM, SURVEILLANCE DETECTIVES OBSERVED SERGIO ESCOBAR EXIT THE ROOM, WALK TO A WAITING TAXICAB DRIVEN BY THOMAS GREEN, WALKED TO THE CAB WITH A BLACK DUFFLE BAG, CARRIED IT INTO ROOM 1534. IN THE ROOM, THE BAG WAS UNZIPPED, REVEALING MARIJUANA AND ECSTACY TO THE INFORMANT.
MR. HERNANDEZ AND THE C.I. EXITED THE ROOM, SHORTLY LATER DROVE FROM THE AREA AND WITH THE DEFENDANT BELIEVING THAT THE INFORMANT WAS TO RETRIEVE MONEY TO PURCHASE THE MARIJUANA AND ECSTASY. A FEW MOMENTS LATER, THE DETECTIVES OBSERVED MR. ESCOBAR CARRY THE DUFFLE BAG FROM THE ROOM AND PUT IT BACK IN THE TRUNK OF THE TAXI. THE TAXI THEN LEFT THE AREA AND THE OFFICERS STOPPED THE VEHICLE WITH THE INFORMANT AND THE DEFENDANT, AND THEY ALSO STOPPED THE TAXI. THIS TAXI WAS SEARCHED AND FOUND TWO BLACK DUFFLE BAGS IN THE TRUNK CONTAINING 22,428 GRAMS OF MARIJUANA AND 332 UNIT DOES OF ECSTASY. THE OFFICERS ALSO FOUND A LOADED .32 CALIBER HANDGUN IN THE DRIVER'S DOOR OF THE TAXI. THESE WERE TESTED AND FOUND TO BE MARIJUANA AND ECSTASY, AS WERE THE DRUGS IN THE OTHER CASE, AND ALL THESE OFFENSES DID TAKE PLACE IN FRANKLIN COUNTY.
(Tr. 9-13.)
 {¶ 4} Defendant entered pleas of guilty in case No. 02CR-11-6905 on count one, a RICO violation, count nine, trafficking in cocaine, and count 15, aggravated trafficking in drugs. The guilty plea form provided the following additional relevant evidence:
I understand the maximum prison term(s) for my offense(s) to be as follows:
Ct. 1: 3-10 years
Ct. 9: 1-5 years mandatory
Ct. 15: 2-8 years mandatory
* * *
I understand that R.C. 2929.13(F) requires mandatory prison term(s) for the following offenses and that I will not be eligible for community control sanctions, judicial release, or earned days of credit in relation to this/these term(s).
Ct. 9: 1-5 years mandatory
Ct. 15: 2-8 years mandatory
I understand that R.C. 2929.13(D) establishes a presumption in favor of a prison term for the following offense(s):
Ct. 1
 {¶ 5} Defendant was also informed that he would be subject to a mandatory five-year period of post-release control, that he would be subject to a mandatory fine, and that his driver's license would be suspended for not less than six months nor more than five years. Further, the guilty plea form indicated that, upon recommendation of the prosecuting attorney and in consideration of defendant's guilty pleas, the court would enter a nolle prosequi as to counts 14, 16 and 17.
 {¶ 6} Defendant completed a similar guilty plea form relative to the second case, No. 03CR-06-4055. Defendant pled guilty to counts one and two, aggravated trafficking in drugs, and count three, the stipulated lesser offense of trafficking in marijuana. In addition to informing defendant of his rights which he was giving up by pleading guilty, the guilty plea form provided defendant the following additional relevant information:
I understand the maximum prison term(s) for my offense(s) to be as follows:
Ct. 1: 2-8 years mandatory
Ct. 2: 2-8 years mandatory
Ct. 3: 1-5 years
* * *
I understand that R.C. 2929.13(F) requires mandatory prison term(s) for the following offenses and that I will not be eligible for community control sanctions, judicial release, or earned days of credit in relation to this/these term(s).
Ct. 1: 2-8 years mandatory
Ct. 2: 2-8 years mandatory
I understand that R.C. 2929.13(D) establishes a presumption in favor of a prison term for the following offense(s):
Ct. 3
 {¶ 7} Defendant was also informed that he would be subject to a three-year mandatory term of post-release control, as well as a mandatory fine.
 {¶ 8} In his first assignment of error, defendant argues that the trial court erred in imposing non-minimum sentences without making the required statutory findings. In his second assignment of error, defendant contends that the imposition of greater than minimum sentences violated his federal constitutional right to have a jury determine all of the facts legally essential to his sentence. In his third assignment of error, defendant argues that the trial court erred in sentencing him to consecutive terms, in part asserting that it violated his federal constitutional right to have a jury determine all of the facts legally essential to his sentence and in part because defendant asserts he had a contractual agreement which did not provide for the imposition of consecutive terms of incarceration. For the foregoing reasons, defendant's first and second assignments of error are sustained, and his third assignment of error is sustained in part and overruled in part.
 {¶ 9} Trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences. State v.Foster, ___ Ohio St.3d ___, 2006-Ohio-856.
 {¶ 10} In his first and second assignments of error, defendant asserts that the trial court imposed both non-minimum and greater than the minimum sentences in violation of jury trial principles afforded by the Sixth Amendment to the United States Constitution and in contravention of Blakely v. Washington
(2004), 542 U.S. 296, 124 S.Ct. 2531, and Apprendi v. NewJersey (2000), 530 U.S. 466, 120 S.Ct. 2348. We agree and sustain defendant's first and second assignments of error on the authority of Foster. Likewise, to the extent that defendant argues, in his third assignment of error, that the trial court imposed consecutive sentences in violation of jury principles afforded by the Sixth Amendment to the United States Constitution, and in contravention of Blakely and Apprendi,
we agree and sustain that portion of defendant's third assignment of error on the authority of Foster.
 {¶ 11} Defendant also argues, relative to the imposition of greater than the minimum sentences that the trial court is precluded from imposing greater than the minimum sentence on him because of the terms of the plea agreement entered into with the prosecuting attorney. However, after reviewing that plea agreement, this court specifically notes that the terms of that agreement would not preclude the trial court from imposing greater than the minimum sentence on defendant when this matter is remanded for resentencing. The plea agreement specifically sets out the range of sentences and indicates that mandatory prison terms are required for certain of the offenses to which defendant pled guilty and that there is a presumption in favor of a prison term with regard to certain counts to which defendant pled guilty. Further, review of the plea agreement indicates that the parties did not discuss a potential sentence of imprisonment, nor did the parties recommend a certain sentence of imprisonment to the trial court. As such, there is nothing in the plea agreement which would preclude the trial court from imposing greater than the minimum sentence on defendant. This portion of defendant's third assignment of error is overruled.
 {¶ 12} In his fourth assignment of error, defendant contends that his plea was not knowingly, voluntarily, and intelligently entered into pursuant to Crim.R. 11 because the trial court did not ensure that he understood the nature of the charges against him.
 {¶ 13} Crim.R. 11(C)(2) provides, as follows:
(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.
 {¶ 14} Defendant specifically contends that the trial court failed to inform him of the nature of the charges pursuant to Crim.R. 11(C)(2)(c). Defendant argues that he was a first-time offender and that, due to his accent, it should have been apparent to the trial court that English was not defendant's first language. Defendant contends that the trial court's discussion with him was insufficient to ascertain whether he understood the nature of the charges. For the reasons that follow, this court disagrees.
 {¶ 15} In State v. Fitzpatrick, 102 Ohio St.3d 321,2004-Ohio-3167, the Supreme Court of Ohio stated, as follows:
"A plea may be involuntary either because the accused does not understand the nature of the constitutional protections he is waiving * * * or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Henderson v. Morgan (1976), 426 U.S. 637,645, 96 S.Ct. 2253, 49 L.Ed.2d 108, fn. 13. In determining whether a defendant understood the charge, a court should examine the totality of the circumstances. Henderson at 644,96 S.Ct. 2253, 49 L.Ed.2d 108; State v. Rainey (1982),3 Ohio App.3d 441, 442 * * *.
However, "[t]he courts of this state have generally held that a detailed recitation of the elements of the charge is not required under Crim.R. 11(C)(2)(a)." State v. Swift (1993),86 Ohio App.3d 407, 621 N.E.2d 513, citing Rainey; accord State v.Kreal, 8th Dist. No. 80061, 2002-Ohio-3634, 2002 WL 1587839, at ¶ 25. * * *
Id. at ¶ 56-57.
 {¶ 16} Recently, in State v. Thomas, Franklin App. No. 04AP-866, 2005-Ohio-2389, this court stated as follows:
* * * Crim.R. 11(C)(2)(a) requires a trial court to determine that the defendant has an understanding of the nature of the charge before the trial court accepts the defendant's guilty plea. As opposed to the requirements contained in Crim.R. 11(C)(2)(c) which involve constitutional rights, a trial court need only substantially comply with the non-constitutional requirements contained in Crim.R. 11(C)(2)(a) and (b). State v.Stewart (1977), 51 Ohio St.2d 86, 93, 364 N.E.2d 1163; State v.Jordan (Mar. 2, 1999), Franklin App. No. 97APA11-1517. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." State v.Nero (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474. Appellant must also show that the trial court's failure to comply had a prejudicial effect. Id. The test is whether the plea would otherwise have been made. Jordan, supra.
At his plea hearing, the trial court did not discuss with appellant the elements of the charge of murder, nor did the trial court specifically ask appellant if he understood the nature of the charge. This court has held, however, that it is not always necessary for a trial court to advise the defendant of the elements of the charge or to ask him if he understands the charge, so long as the totality of the circumstances demonstrate that the defendant understood the charge. State v. Rainey
(1982), 3 Ohio App.3d 441, 446 N.E.2d 188, paragraph one of the syllabus; State v. Cantrell (Mar. 26, 2002), Franklin App. No. 01AP-818. * * *
Id. at ¶ 10-11.
 {¶ 17} In the present case, this court finds that, under the totality of the circumstances, the trial court complied with the requirements of the law and that defendant has not shown that he was prejudiced by any failure on the part of the trial court. The prosecuting attorney provided a lengthy and very detailed recitation of the facts surrounding the charges against defendant, including the evidence which would be presented if the matter proceeded to trial. Further, defense counsel stated that he had reviewed the matter with defendant and that he believed that defendant understood the nature of the proceedings. The trial court specifically inquired whether or not defendant could read and write English and whether or not he spoke English proficiently. Defendant answered both questions in the affirmative. Although defendant argues that he was unfamiliar with the criminal justice system, the presentence investigation indicates otherwise. In 1994, defendant was charged with extortion and kidnapping. He pled guilty to coercion with threat of physical injury and was sentenced to three years' probation. Defendant violated his probation and was sentenced to serve 60 days in jail. In 1996, defendant was found guilty of menacing and sentenced to one year of probation. Defendant violated the probation and a bench warrant was issued. Later, in 1997, defendant was found guilty of criminal mischief and reckless operation and was sentenced to serve 60 days in jail and two years' probation. In 1999, defendant was charged with failing to comply with the orders of a police officer, assaulting a police officer, attempted escape, and attempted possession of cocaine. Defendant was sentenced to three years of community control, with six months of work release.
 {¶ 18} As stated previously, under the totality of the circumstances, this court finds that the trial court substantially complied with Crim.R. 11, that defendant's guilty pleas were entered voluntarily, knowingly, and intelligently, and that defendant has failed to show any prejudice in the matter. As such, defendant's fourth assignment of error is overruled.
 {¶ 19} Based on the foregoing, defendant's first and second assignments of error are sustained, his third assignment of error is sustained in part and overruled in part, and his fourth assignment of error is overruled. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for resentencing pursuant to Foster.
 Judgment affirmed in part, reversed in part, and causeremanded for resentencing.
Bryant and Travis, JJ., concur.