**Donald A. ALLARD, Petitioner, Appellant,**

v.

**Raymond A. HELGEMOE et al., Respondents, Appellees.**

No. 77–1312.

United States Court of Appeals, First Circuit.

Argued Dec. 7, 1977.

Decided March 3, 1978.

Eleanor Krasnow, Manchester, N. H., by appointment of the court, for petitioner, appellant.

Richard B. Michaud, Asst. Atty. Gen., Concord, N. H., with whom David H. Souter, Atty. Gen., and Richard B. McNamara, Asst. Atty. Gen., Concord, N. H., were on brief for respondents, appellees.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Petitioner was indicted and charged with the crime of burglary and pleaded guilty to that offense in February, 1974. He was advised by experienced counsel at the time he entered his plea. At the proceeding petitioner signed an "Acknowledgement of Rights", but the trial judge did not explain the elements of the offense of burglary to him nor did his attorney indicate that he had thoroughly discussed the charge with the defendant. After the plea was accepted but before the imposition of sentence, petitioner's attorney recited to the court petitioner's view of the facts relating to his participation in the crime. Those facts were not consistent with the element of the offense requiring an intent to steal during the breaking and entering; instead they suggested that petitioner had developed the intent to steal ("did succumb to a temptation") after entering the building where the crime occurred. If these facts were correct, petitioner was actually guilty of theft, an offense with a far lighter penalty than burglary. Petitioner, who had a long record of similar offenses, was sentenced to prison for three to five years for the crime of burglary.

Petitioner moved to have his guilty plea withdrawn in 1975. His motions were denied and the New Hampshire Supreme Court affirmed that denial. Petitioner then filed for a writ of habeas corpus. The district court held an evidentiary hearing to determine whether or not petitioner's plea was informed and voluntary. The court

concluded that although petitioner's attorney had done everything he could to explain the elements of the offense to him, the petitioner did not fully understand what he was told.[1] The court also found that while petitioner was generally unable to evaluate his likelihood of success at trial, he was capable of understanding that his attorney was competent to make such judgments, and he understood his attorney's advice that he would probably receive a more severe sentence if he went to trial and was convicted than if he pled guilty. The district court denied the petition for habeas corpus relief. Petitioner appealed.

The facts of this case and the issue presented require us to consider several lines of authority which here intersect.[2] The district court wrestled with two relevant Supreme Court cases, *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) and *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The Court held that Alford's bar to attacking a guilty plea, made with the expectation of a shorter sentence than if trial and conviction had taken place, applied not only to a case such as *Alford* where a defendant was aware of the critical elements of the crime, but also to a case where, unlike *Henderson,* a defendant's attorney had explained the elements of the crime although the defendant may not have understood them. We begin with *Alford.*

*Alford* holds that a court may constitutionally accept a plea of guilty from a defendant who continues to protest his innocence because an "express admission of guilt . . . is not a constitutional requisite to the imposition of criminal penalty." *Id.* at 37, 91 S.Ct. at 167. The defendant, Alford, pled guilty to second degree murder while insisting on facts totally inconsistent not only with the specifics of the crime charged, but of any wrong doing.[3] While Alford's attorney only recommended to his client that he plead guilty and left the ultimate decision to the defendant, Alford's decision was based on total reliance on his attorney's evaluation of his situation.[4]

The Court emphasized in reaching its conclusion approving the acceptance of Alford's plea that the judge had been presented with strong evidence of Alford's actual guilt. This was important for two reasons. It weakened the reliability of Alford's claims that he was actually innocent and it provided a factual basis for the defendant's decision to plead guilty despite his belief in his own innocence. The Court recognized that it may often be in the interest of a defendant to plead guilty when it appears that he would be convicted after trial in any case.

The present case is distinguishable from *Alford,* but a comparison between the two is striking in certain respects. In both *Alford* and the present case the defendants, as most laymen must, relied heavily on the advice of their counsel that it was in their best interests to plead guilty. In both cases there was a reasonable factual basis for

---

1. Specifically the district court concluded, "The petitioner may have understood the intent requirement of burglary at some time for a brief period, but he did not carry that understanding with him to his plea hearing, nor was he ever able to thoroughly comprehend the importance of the element of the crime. . . . It is unlikely that he will ever be able to comprehend the element of intent required, and the other elements of burglary as they distinguish it from the crime of breaking and entering, and retain that comprehension for any length of time."

2. At the outset we should note that we reject respondent's argument that the case is moot. We are not convinced that the possibility of petitioner suffering adverse collateral consequences from this conviction is so remote that it falls outside of the rule of *Sibron v. New York,* 392 U.S. 40, 55, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

3. The defendant in *Alford* stated, "I ain't shot no man, but I take the fault for the other man. We never had an argument in our life." 400 U.S. at 28 n.2, 91 S.Ct. at 163.

4. Indeed, Alford stated under questioning that, "I just pleaded guilty because they said if I didn't they would gas me for it", and "Well, I'm still pleading that you all got me to plead guilty . . . .. You told me to plead guilty right. I don't—I'm not guilty but I plead guilty." 400 U.S. at 28 n.2, 91 S.Ct. at 163.

believing the advice to be sound. In both cases defendants presented facts inconsistent with their plea, but there was some reasonable basis for doubting the reliability of their statements.[5] The singular difference is that Alford understood the discrepancy between his version of the facts and the substantive content of the charges against him and defendant here did not. If defendant had been able to understand fully this discrepancy in his own case, he might have continued to plead guilty while asserting his own version of the facts. This without more would not have invalidated his plea under *Alford*. *Alford* stands squarely for the proposition that the subjective belief in one's own innocence does not render a guilty plea constitutionally suspect as long as there are grounds for doubting the reliability of that belief and for calculating that one's defense at trial would most likely be unsuccessful. Here, as we have previously noted, all these conditions have been met.[6] However, an understanding or the discrepancy between his own view of the facts and the elements of the offense might have so altered defendant's calculations as to the success of his defense that he would decide to change his plea and go to trial. While the decision might have been foolish, it was within his right. The defendant's lack of under-

standing reduced his capability to make the decision as to whether or not to go to trial.

The question before us then is whether such an incapacity vitiates the constitutionality of petitioner's plea. We do not think that it does, but to reach that conclusion we must evaluate the circumstances surrounding the plea from all the perspectives relevant to this case: the degree of confusion or incapacity demonstrated by the defendant,[7] the information available to the defendant to help him make his decision, and the importance to the defendant's calculations of the legal principles which he did not comprehend. An egregious failure or distortion of any of these perspective would void a guilty plea; in addition, the cumulative effect of marginal failures of more than one could lead us to find a plea unconstitutional. We shall examine each in turn.

The majority of the circuits examining the question of what degree of mental competence is necessary to plead guilty have concluded that the standard of incompetence to plead is the same as the standard of incompetence to stand trial. *See United States ex rel. McGough v. Hewitt*, 528 F.2d 339 (3d Cir. 1975); *Malinauskas v. United States*, 505 F.2d 649 (5th Cir. 1975); *United States v. Harlan*, 480 F.2d 515 (6th Cir. 1973); *Wolf v. United States*, 430 F.2d 443 (10th Cir. 1970); *United States v. Valenti-*

---

**5.** In Alford's case the objective evidence against him weakened the reliability of his claims of innocence at the same time as it supported the calculation that his defense at trial would be unsuccessful. In the present case petitioner was the only witness who could testify that he developed the intent to steal after entering the building. This self-serving testimony would have been further countered by the prosecutor's introducing evidence of the defendant's numerous prior convictions for burglary. Thus there was a strong basis for believing that defendant would be unsuccessful at trial. Moreover, petitioner's prior record would not only have reduced his credibility before a jury, it could also be taken into account by the court in evaluating petitioner's statements that were inconsistent with his guilty plea.

**6.** We reject petitioner's argument that his guilty plea could not be accepted under the *Alford* standards because none of the evidence relevant to his guilt or credibility was before

the trial court at the time his plea was accepted. We think it is sufficient that at the time of the motion to withdraw the plea and from that time thereafter this case's record has included petitioner's prior convictions and his view of the facts of the case as reported by his attorney.

**7.** Petitioner attempts to disassociate himself from the question of his competency to plead by arguing his case from the perspective of whether or not there was an intelligent and voluntary waiver of his right to trial under the rule of *Henderson v. Morgan, supra*. However, in defendant's case this is a distinction totally without substance. Defendant's position is that he was mentally incapable of understanding the elements of the offense and that such understanding is constitutionally necessary for a guilty plea to withstand review. This is nothing more nor less than arguing that defendant was mentally incapable or incompetent to plead guilty.

*no,* 283 F.2d 634 (2d Cir. 1960). *Contra Sieling v. Eyman,* 478 F.2d 211 (9th Cir. 1973). That standard was first announced in *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) and states that the "test must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as a factual understanding of the proceedings against him." We do not believe that a defendant's inability to understand elements of the crime of burglary such as intent requires us to find him incompetent under the *Dusky* standard.[8]

However, the focus of petitioner's appeal is not that he should be found incompetent under *Dusky.* He argues that there is a middle category of defendants who do not have the mental capacity to plead guilty but who may be competent to stand trial under *Dusky,* and that he falls into that category. Not only is this view generally without support in the case law; it raises disturbing policy issues as well.

Petitioner contends that his middle category of competence would not create administrative problems for the criminal justice system or unfairness for other defendants. He suggests that normal plea bargaining should take place, followed by a competency hearing to determine the defendant's ability to stand trial or to plead guilty. If the defendant is found competent to stand trial but not to plead guilty, he must be tried. If the defendant is then found guilty, the prosecutor is bound to the terms of the original plea bargain.

We believe petitioner's suggestions as to how a double standard might function procedurally are ingenious but unworkable. If the prosecutor must plea bargain in the dark without knowledge of defendant's possible incapacity to understand the charges against him, the plea bargaining system would become even more unwieldy than it presently is. It is apparent that the ability to understand all the elements of an offense is not something that can be precisely or easily measured. Indeed, while there are currently psychological experts who claim to be able to determine an individual's competency to stand trial under the general standard of *Dusky,* we know of no similar experts in the much more exact field of determining whether or not a specific individual fully understands all the elements of a particular offense. It is clear that the defendant himself would be a crucial witness. Yet under defendant's plan, most defendants would have every incentive to be found incompetent to plead. They would then have the best of all possible worlds, a chance to convince a jury of their innocence and a prosecutor bound to the lenient sentence offered in plea bargaining if they are found guilty. It is hard to imagine a defendant so incompetent that he would not want to at least try to take advantage of this possibility.[9]

On the other hand, if the prosecutor has some knowledge of the defendant's mental state or his intention to have his competency to plead determined at a hearing, there is no reason for him to spend any time in bargaining until the hearing is completed. The individual found incompetent to plead would then be tried without benefit of plea bargaining. If found guilty, unless petitioner would postulate some sort of rule prohibiting judges from imposing the maximum sentence permitted by law on those incompetent to plead, such defendants would simply have their sentences determined by the discretion of the trial judge within the law—a far less reliable guarantee of leniency than a plea bargain would provide.

The district court recognized the consequences of creating such a middle category for the individuals falling within it when it

---

8. We express no opinion as to whether petitioner may actually be incompetent to stand trial and to plead guilty as well. There has been no factual determination of petitioner's competency under the *Dusky* test in this case.

9. It is obvious that defendants have no such incentive under a single competency standard. It is not in many defendants' self interest to be found incompetent to stand trial.

noted, "To require that the petitioner be able to understand the subtle distinction involved between the crimes of breaking and entering and burglary before he could plead guilty would deprive him of his right to plead guilty and obtain a lighter sentence." Whether defendants actually have a literal and absolute right to plead guilty seems to us to be beside the point. What is clear is that it may very well be in the interests of certain defendants capable of standing trial under our system of criminal justice to be able to plead guilty and that if petitioner's arguments were adopted those defendants could lose their opportunity to do so.

As to the second factor, the information available to the defendant to help him make his decision, we believe the record indicates, and the district court confirmed, that defendant's attorney gave him a full explanation of the elements of the offense. Whatever else *Henderson v. Morgan,* 426 U.S. 639, 96 S.Ct. 2253 (1976) does or does not hold, it clearly requires that this information be made available to the defendant. We hold that this aspect of the requirements of *Henderson v. Morgan* was satisfied in the present case.

The last perspective raises the most difficult problems. Petitioner argues with considerable persuasiveness that an understanding of the elements of the offense with which one is charged is essential in practical terms to make any kind of informed evaluation as to the probability of success at trial. Moreover, he asserts that *Henderson v. Morgan* holds that such understanding is a necessary prerequisite for a constitutional guilty plea unless there is factual evidence on the record that can serve as a "substitute" for a voluntary admission of the element of the crime which was not understood.[10] Thus petitioner argues that an understanding of the elements of the offense has a separate formal status in constitutional terms from the other legal principles a defendant would need to understand to properly evaluate his chances of success at trial.

There is considerable language in the *Henderson* opinion to support petitioner's construction. *See, e. g., Henderson v. Morgan, supra,* 426 U.S. at 645, n.13, 646, 649 n.1, 96 S.Ct. 2253. Yet his language loses much of its force when it is read in terms of the actual problem the Court was confronting in *Henderson. Henderson* dealt with a lack of notice and information which led to the ignorance of the defendant in entering his plea. There is no indication in the case at all that the Court ever considered the problem of a fully informed defendant who lacked the capacity to understand some part of the charges against him. Indeed, in the very same paragraph in which the Court notes the limited mental capacity of the defendant in *Henderson,* it responds to the government's argument that its holding will produce a wave of collateral attacks on guilty pleas by explaining that such fears are "exaggerated" since "Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. This case is unique because the trial judge found as a fact that the element of intent was not explained to respondent." *Id.* at 647, 96 S.Ct. at 2258. One can only conclude from this argument that the Court assumed it was dealing with a constitutional failure that could be easily and objectively determined and prevented. This is certainly not true of the subjective and extremely difficult to measure standard of fully understanding the elements of an of-

---

10. *Henderson* involved a defendant who pled guilty to second degree murder; an element of that offense is the intent to cause death. His case reached the Supreme Court on his claim that his guilty plea was involuntary because he had never been informed that intent was a critical element of the offense. The Court agreed that his plea was involuntary in the constitutional sense.

fense. We do not believe the Court intended its holding in *Henderson* to apply to those incapable of such understanding; had it so intended, it would have simply ignored all of the additional problems and case law relevant to that much broader problem.

In our view the authorities are complementary not inconsistent. *Henderson* deals with the objective requirements of due process; the competency cases deal with the subjective ability of the defendant to participate in the process. The voluntary waiver analysis of *Henderson* does not contradict the case law and policy arguments which maintain that the *Dusky* standard should apply to questions of a defendant's mental competence to stand trial and his competence to plead guilty. Thus *Henderson* does not control cases relating to the mental incapacity to understand the elements of the offense with which one is charged.

We admit that the courts have had a far easier time dealing with objective problems of notice and ignorance based on lack of information than they have with varying levels of intelligence and mental capacity, though both failures can produce decisions based on comparable degrees of misunderstanding. We must accept the obvious fact that different defendants will have different abilities (as will their counsel) in making all legal decisions, including the decision whether or not to plead guilty as opposed to going to trial. Most will have no choice but to rely heavily on the advice of their counsel in evaluating all the factors affecting their chances of success at trial. Thus, for example, a defendant may simply have to accept his attorney's contention that evidence the defendant believes might exonerate him would be inadmissible because it violates a rule of evidence. If such a defendant were to complain after pleading and sentencing that he did not understand the rule of evidence in question and would have pleaded differently if he had (although his counsel had correctly understood the law and explained it to him), we do not believe that we or any other court would hold that the Constitution required us to permit him to withdraw his plea on those

grounds. The situation before us is essentially similar.

There must always be some compromise between a system's fairness and its ability to function; the courts must attempt to maximize the fairness in the system as a whole although in particular cases that may result in less than maximum fairness for a particular individual. Because in many cases it could create a hardship to deprive a defendant of the opportunity to accept his counsel's recommendation and plead guilty, and because a standard of incapacity to plead guilty different from the standard of incompetence to stand trial could not be created without incurring that result, we hold that incapacity to understand part of the elements of the offense with which one is charged does not without more, make a guilty plea involuntary in constitutional terms.

This is not to say that in no circumstances can such an incapacity vitiate the constitutionality of a guilty plea. At the least the "rational understanding" of *Dusky* requires that the defendant understand and agree that he performed some acts, and that those acts are unlawful. It goes without saying that those acts should be the objective substance of the crime for which the defendant is charged. However, when the defendant fails to understand such legal nuances as the timing at which his intent to commit the illegal act occurred, despite the dramatic emphasis the law puts on that legal distinction, a guilty plea based on the rational decision to accept competent counsel's advice as to the wisdom of pleading or going to trial should be acceptable.

*We affirm the district court's judgment that petitioner's lack of understanding of certain elements of the offense with which he was charged does not render his guilty plea unconstitutional.*