UNITED STATES of America ex rel. Joseph CYBURT, Petitioner-Appellant,

v.

Charles J. ROWE et al., Respondents-Appellees.

No. 78–2147.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 19, 1980.*

Decided Jan. 19, 1981.

Joseph R. Cyburt, pro se.

Fred Montgomery, Chicago, Ill., for respondents-appellees.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively decided oral argument was unnecessary. The notice provided that any party could file a "Statement as to Need for Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 14(f). Neither party filed such a statement. Upon consideration of the briefs and the record, the appeal is submitted for decision without oral argument.

Before PELL, SPRECHER, and BAUER, Circuit Judges.

PELL, Circuit Judge.

In this habeas action, petitioner Joseph Cyburt seeks release from the Menard Psychiatric Center in Menard, Illinois.

The State of Illinois brought two indictments against Cyburt. The first charged that on February 5, 1973, he abducted an eight-year-old girl as she was walking to school, took her to his apartment, and forced her to engage in sexual activity with him. The second indictment charged that on February 12, 1973, Cyburt invited his sixteen-year-old half sister to his apartment and there raped her and forced her to perform oral sex on him.

The state trial court ordered a pretrial psychiatric examination of Cyburt to evaluate his competence to stand trial. The psychiatric report, dated May 10, 1973, concluded with the following diagnosis: "Personality disorder, other. Pseudo sociopathic schizophrenia.... Patient appears mentally fit for trial." In light of this report, the trial court did not order a full-blown evidentiary hearing on Cyburt's competence.

On June 28, 1973, Cyburt pleaded guilty to two counts of kidnapping[1] and one count of deviate sexual assault in connection with the first indictment, and to one count of rape, one count of incest and one count of deviate sexual assault in connection with the second indictment. At the guilty plea hearing, the trial judge told Cyburt that by pleading guilty he would give up his right to remain silent and his right to a jury trial, and stressed that he did not have to plead guilty. Several times during the proceedings Cyburt indicated that he did not understand the judge's admonishments. Each

time this occurred, the judge offered to give Cyburt more time to decide whether he wanted to persist in pleading guilty.[2] The judge also indicated that he had tentatively agreed to sentence Cyburt in accordance with the recommendation promised by the prosecution. After establishing a factual basis, the judge accepted the plea. Before sentencing,[3] Cyburt's attorney advised the judge that as part of the plea bargain the prosecution had promised that Cyburt would be placed in a psychiatric unit immediately. The judge thereupon questioned the attorney as to Cyburt's competence to enter the guilty plea. The attorney assured the judge that he was not suggesting Cyburt was incompetent, and stated, "Your Honor, my client knows the nature of the charges and has been able to cooperate with me." Cyburt, speaking in his own behalf before sentencing, stated, "The only thing I would like to say is if I was in my right mind, I could hold out long enough and have a jury trial. But I can't go another day in the jail. I just want to go and have psychiatric treatment." The judge promptly questioned Cyburt as to his understanding of the proceedings and Cyburt responded that he did understand what had transpired.

Cyburt received concurrent sentences on the counts to which he pleaded guilty, the longest of which was for a minimum of 15 years and a maximum of 40 years in prison. He did not directly appeal. His application for post-conviction relief was denied by the Illinois Circuit Court. The Appellate Court reversed his conviction for incest but refused to disturb his other convictions.[4] Cyburt did not appeal this decision to the Illinois Supreme Court.

1. The prosecution inadvertently included two counts of kidnapping in the charge. The second kidnapping count was dropped when the prosecution brought the error to the trial court's attention.

2. The proceedings were in fact halted several times while Cyburt consulted with his attorney. The interruptions are discussed further at note 10, *infra.*

3. Cyburt waived a presentence investigatory report. Sentencing took place immediately upon acceptance of the guilty plea.

4. The Illinois Appellate Court found the conviction for incest an impermissible multiple conviction. *People v. Cyburt,* 50 Ill.App.3d 414, 8 Ill.Dec. 618, 365 N.E.2d 1004 (1977).

Cyburt then filed this petition for a writ of habeas corpus in the United States District Court for the Northern District of Illinois. The district court granted summary judgment in favor of the respondents, and Cyburt appealed.

■ Liberally construed,[5] Cyburt's brief raises six issues on this appeal. We may dispose of two of these quickly. First, we reject Cyburt's argument that summary judgment was inappropriate. The respondents accept Cyburt's recounting of the facts in this case. Since no genuine issue of material fact is presented, disposal of the case by summary judgment was proper. Second, we decline to consider Cyburt's complaint that the state trial court erred in not granting him a preliminary hearing on the first indictment. This argument was neither raised nor decided in the court below. *See Ohio Casualty Ins. Co. v. Rynearson*, 507 F.2d 573, 582 (7th Cir. 1974).

Cyburt's first argument of substance is that the state trial court should have conducted a hearing to determine his competence before accepting his guilty plea.

As a preliminary matter, the parties offer different standards of competence applicable on a guilty plea. Respondents rely on the Illinois procedural rule governing a defendant's competence to stand trial or to be sentenced. Under the Illinois rule, a person is competent to stand trial or to be sentenced unless he is unable "(1) to understand the nature and purpose of the proceedings against him; or (2) to assist in his defense." Ill.Rev.Stat. ch. 38 § 1005–2–1(a).[6] This is the standard of fitness for trial set forth in *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), and it does not by its terms address competence to plead guilty. Cyburt

argues that the *Dusky* standard should not govern fitness to plead guilty. Rather, he urges this court to follow the Ninth Circuit in holding a person incompetent to plead guilty "if a mental illness has substantially impaired his ability to make a reasoned choice among the alternatives presented to him and to understand the nature of the consequences of his plea." *Sieling v. Eyman*, 478 F.2d 211, 215 (9th Cir. 1973). The *Sieling* court reasoned that when a defendant pleads guilty he waives several important constitutional rights, and that it follows that his competence to waive these rights ought to be assessed "with specific reference to the gravity of the decision with which the defendant is faced." *Sieling*, 478 F.2d at 215. The Ninth Circuit relied on *Drope v. Missouri, supra*, in which the Supreme Court remarked that "one who became 'mad' after the commission of an offense should not be arraigned for it 'because he is not able to plead to it with that advice and caution that he ought,'" *Id.*, 420 U.S. at 171, 95 S.Ct. at 903, quoting 4 W. Blackstone, Commentaries *24, and on *Rees v. Peyton*, 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966), in which the Supreme Court refused to allow the withdrawal of a petition for certiorari until a factual determination could be made "whether [the petitioner] ha[d] capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation . . . ." *Id.* at 314, 86 S.Ct. at 1506. The District of Columbia Circuit has also adopted this position. *United States v. Masthers*, 539 F.2d 721, 726 (D.C.Cir.1976).

Other circuits, however, have held that the standards of competency to stand trial and to plead guilty are both governed by *Dusky, supra*.[7] In particular, the First Cir-

---

**5.** Pro se petitioners are held to less stringent standards of pleading and arguing than licensed attorneys. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

**6.** This rule was held constitutionally adequate in *Drope v. Missouri*, 420 U.S. 162, 172–73, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975).

**7.** In *United States v. Valentino*, 283 F.2d 634 (2d Cir. 1960), the Second Circuit seems to

have assumed that the standards of fitness to stand trial and fitness to plead guilty are the same. The possibility of different standards was not raised because the court found substantial evidence that the defendant could not even understand the nature of the proceedings against him. In *Wolf v. United States*, 430 F.2d 443 (10th Cir. 1970), the court stated that the standard of fitness to plead guilty is governed

cuit raised a strong argument against setting two different standards of competency: with two standards, a defendant could be found competent to stand trial but incompetent to plead guilty, and such a defendant would be deprived of the advantage of bargaining for a more lenient sentence. *Allard v. Helgemoe*, 572 F.2d 1, 5 (1st Cir. 1978).

Although the *Allard* court's argument is logically persuasive, the *Sieling* rule also presents a strong argument in its favor.[8] We need not decide the issue here, however, because under either standard, Cyburt's guilty plea was properly accepted.

■ The Illinois trial court was constitutionally required to conduct a hearing to determine Cyburt's competence to plead guilty only if it entertained a bona fide doubt as to his competence. *Drope v. Missouri*, 420 U.S. 162, 172–73, 95 S.Ct. 896, 904, 43 L.Ed.2d 103; *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Ill.Rev.Stat. ch. 38 § 1005–2–1(c). In determining whether the trial court should have entertained such a doubt, this court must review the evidence that was available to the trial court before and during the guilty plea proceedings. *Drope, supra*, 420 U.S. at 174, 95 S.Ct. at 905. According to the record, the state trial court had before it a psychiatric evaluation that diagnosed Cyburt as having a "personality

disorder" and "pseudo sociopathic schizophrenia." But the report also described Cyburt as coherent, relevant, and of above average intelligence, and suggested he was quite capable of evaluating his chances for success in a jury trial:

> He says that the first charge is somewhat flimsy; the second charge is pretty good.... He says that he wants a bench trial because he feels that a jury will be prejudiced against him in a sexual charge.

Fairly read, the psychiatric summary describes an individual who, although disturbed, was lucid and intelligent, and who was capable of understanding the charges against him, of assisting in his defense, and of making a rational decision to plead guilty.

■ The only other evidence of Cyburt's competence available to the state trial judge was Cyburt's behavior at the June 28, 1973, guilty plea proceeding.[9] Cyburt characterizes his behavior as so irrational and bizarre that the trial court must have had doubts about his mental competence. The transcript of the proceedings does not support this contention. It appears from the transcript that Cyburt was agitated during the proceedings. But in any criminal proceeding a defendant is likely to be, at best, somewhat anxious. Mere agitation does

by *Dusky, supra*, without discussion. In *Malinauskas v. United States*, 505 F.2d 649 (5th Cir. 1974), the Fifth Circuit refused to set a different standard of competence to plead guilty because of lack of precedent. The Third Circuit, in *United States ex rel. McGough v. Hewitt*, 528 F.2d 339 (3d Cir. 1975), recognized the *Sieling* holding but rejected it, finding inquiry under the *Dusky* test sufficient. *Id.* at 342 n.2.

**8.** It is true, as the *Allard* court pointed out, that plea bargaining is often in the defendant's best interest because it usually results in a lighter sentence than might be imposed by a jury after trial. But what the *Allard* court did not state is that when a person who is incapable of making "a reasoned choice among alternatives" agrees to plead guilty, he usually does so at the urging of his attorney, or of the prosecution, or both. Implicit in the *Allard* court's conclusion that such a person should be permitted to plead guilty is the belief that the professionals in criminal justice know what is best for him and

should be allowed to make the decision for him. This view would seem to run counter to our notions of "an adversary system of justice," *Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975).

**9.** Cyburt alleges in his brief that proceedings were also held on June 26, 1973, and that they were halted because he became too emotional. We have searched the record for some corroborative reference to a June 26 proceeding and have found none. Moreover, the transcript of the June 28 proceedings is not denoted a continuance of prior proceedings, although on the June 29 transcript the notation appears: "Court convened pursuant to continuance." It is doubtful that any proceedings took place on June 26. Even if they did, however, it was not excessively bizarre for Cyburt to become emotional at the prospect of reviewing his commission of two rather sordid crimes and of receiving lengthy jail terms.

not constitute sufficiently bizarre behavior to alert the trial judge to the possibility of a defendant's incompetence. Similarly, that the proceedings were interrupted while Cyburt conferred with his attorney would not raise a bona fide doubt as to his competence.[10]

Finally, both Cyburt and his attorney repeatedly assured the judge of Cyburt's ability to proceed with the plea. Such assurances, of course, do not act as a waiver of the competency issue; but at the same time the trial judge must rely to some extent upon counsel to focus this issue. *Drope v. Missouri, supra*, 420 U.S. at 177 n.12, 95 S.Ct. at 906 n.12; *United States ex rel. Roth v. Zelker*, 455 F.2d 1105, 1108 (2d Cir. 1972). We hold that where, as here, the assurances of the defendant and his counsel serve to corroborate a psychiatric finding of competence and the defendant's courtroom demeanor is on the whole composed and lucid, the trial court's failure to hold a full-blown competency hearing is not constitutional error.

■ Cyburt next contends that his guilty plea was involuntary.[11] He points out that the state trial judge failed to inquire fully into the details of his plea agreement with the prosecution, failed to inquire whether the plea was induced by force or threats or promises apart from the plea agreement, and failed to inform him of his right to confront witnesses. The transcript of the guilty plea proceedings corroborates these allegations. It is also true, as Cyburt asserts, that Illinois Supreme Court Rule 402 (Ill.Rev.Stat. ch. 110A § 402) requires the trial court to make the omitted inquiries and admonishments.

■ A trial court's failure to comply with these requirements, however, is not necessarily a ground for habeas relief. Only if such failure is shown to be a "fundamental defect which inherently results in a complete miscarriage of justice" is it a ground for relief. *Hill v. United States*, 368 U.S. 424, 432, 82 S.Ct. 468, 473, 7 L.Ed.2d 417 (1962); *United States ex rel. Peery v. Sielaff*, 615 F.2d 402, 404 (7th Cir. 1979). Cyburt has failed to make such a showing. The transcript indicates that the trial court was apprised of the material terms of the plea agreement; therefore the court's failure to inquire into it was not an error of constitutional dimension. Moreover, Cyburt does not allege any specific threat by which he was induced to plead guilty, and the transcript does not support his conclusory allegations that he was "coerced" by his attorney and by the trial court to plead guilty. Finally, Cyburt has not alleged any prejudice resulting from the trial court's failure to inform him of his right to confront witnesses. We therefore reject Cyburt's claim that his plea was not voluntary.[12]

Cyburt's final argument is that he did not receive effective assistance of counsel. Again, we disagree.

■■ To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that his attorney failed to meet a "minimum standard of professional representation." *United States ex rel. Williams v. Twomey*, 510 F.2d 634, 641 (7th Cir.), *cert. denied sub nom. Sielaff v. Williams*, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d

---

**10.** The proceedings were interrupted eight times: four times upon Cyburt's request to confer with his attorney, and twice when Cyburt signed plea documents. While there is no explanation for the other two interruptions, it does not appear that they constituted serious disruptions of the proceedings.

**11.** A guilty plea is not valid unless it is voluntarily and knowingly entered, *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Clay v. Director*, 631 F.2d 516, 518 (7th Cir. 1980).

**12.** *See also Williams v. Smith*, 591 F.2d 169 (2d Cir. 1979) (trial court's inadvertent misrepresentation to defendant as to maximum possible sentence did not render guilty plea involuntary where defendant would not have changed plea had he known the true maximum); *Creighbaum v. Burke*, 398 F.2d 822 (7th Cir.), *cert. denied*, 393 U.S. 955, 89 S.Ct. 386, 21 L.Ed.2d 368 (1968), *reh. denied*, 393 U.S. 1046, 89 S.Ct. 645, 21 L.Ed.2d 600 (1969) (state trial court's failure to give defendant express warning of precise range of possible sentence did not render defendant's plea involuntary).

109 (1975). The burden is on the petitioner to overcome the presumption that his attorney was conscious of his duties and sought conscientiously to discharge them, *United States v. Fleming*, 594 F.2d 598 (7th Cir. 1979). Cyburt alleges several instances of his attorney's ineffectiveness. These allegations are insufficient to sustain his argument. First, the record indicates that Cyburt's attorney did not know him to be innocent, as Cyburt asserts; to the contrary, the attorney indicated his awareness of the psychiatric summary in which was reported Cyburt's free admission of his guilt. Counsel's failure to request a competency hearing merely reflected a recognition that a defendant's mental illness does not necessarily render him incompetent to plead guilty. Counsel did not waive Cyburt's rights without his consent, nor does the record show that counsel intimidated Cyburt into signing the jury waivers. Finally, Cyburt offers no motion, objection or defense that counsel ought to have raised; counsel's failure to do so is therefore no indication of ineffectiveness. We conclude that Cyburt's attorney met the minimum requirements of *Twomey*.

For the foregoing reasons, the order granting summary judgment to the respondents is affirmed.