Walter NELSON, Petitioner, Appellee,

v.

William F. CALLAHAN, Respondent,
Appellant.

Walter NELSON, Petitioner, Appellant,

v.

William F. CALLAHAN, Respondent,
Appellee.

Nos. 83–1195, 83–1196.

United States Court of Appeals,
First Circuit.

Argued Oct. 7, 1983.
Decided Nov. 14, 1983.

Bernard Grossberg, Boston, Mass., by appointment of the Court, for petitioner, appellee.

Francis Robinson, Newton, Mass., with whom Francis X. Bellotti, Atty. Gen., Frederick R. Riley, Asst. Atty. Gen., Chief, Criminal Bureau, Barbara A.H. Smith, Asst. Atty. Gen., Chief, Criminal Appellate Division, and Michael B. Roitman, Asst. Atty. Gen., Boston, Mass., were on brief, for respondent, appellant.

Before BOWNES and BREYER, Circuit Judges, and SMITH,* Senior District Judge.

BOWNES, Circuit Judge.

In this habeas corpus action, petitioner Walter Nelson challenges the constitutional validity of his 1956 criminal convictions in the Massachusetts courts on the grounds that his guilty pleas were involuntary. Nelson was indicted in February, 1956, by a Suffolk County grand jury for first degree murder, sodomy and assault with intent to commit rape. After observation at the State Hospital in Bridgewater, he was pronounced "feeble-minded" but "sane" and "responsible for his alleged criminality." At his arraignment in April, 1956, Nelson pled not guilty to all three charges. After several days of trial, however, he entered guilty pleas to second degree murder, sodomy and assault with intent to commit rape; he was sentenced to consecutive prison terms of life, 18 to 20 years, and life for the respective offenses.

In 1970, Nelson moved in the Superior Court of the Commonwealth for a new trial, claiming that his convictions rested in part on a coerced confession. After a hearing, the motion was denied. Nelson filed a second motion in the Supreme Judicial Court in 1976, which was remanded to the Superior Court. On April 24, 1979, the Superior Court made detailed findings of fact and conclusions of law: it held that the pleas to second degree murder and sodomy were voluntary and therefore valid, but that the assault plea was not. The sentence and indictment for assault with intent to commit rape were accordingly vacated and dismissed on June 12, 1979, and February 12, 1981, respectively. Nelson unsuccessfully appealed the denial of his motion with respect to the murder and sodomy charges to the Massachusetts Appeals Court, *Commonwealth v. Nelson,* 9 Mass.App. 886, 402 N.E.2d 1073 (1980) (affirming Superior

* Of the District of Montana, sitting by designation.

Court), the Supreme Judicial Court denied further review.

On February 24, 1981, Nelson filed a habeas corpus petition in the United States District Court for the District of Massachusetts challenging the validity of his pleas to second degree murder and sodomy. On February 16, 1983, the district court, Zobel, J., granted the petition with respect to the sodomy charge and denied it with respect to the murder charge. Both Nelson and the Commonwealth have appealed.

The Superior Court found the relevant facts surrounding Nelson's change of plea in 1956 as follows. After Nelson initially pled not guilty on all counts, a jury was impanelled and the trial proceeded for three or four days: several prosecution witnesses testified, and a confession signed by Nelson was ruled voluntary and admitted into evidence. At this point, defense counsel conferred with Nelson and members of his family. He advised them that the jury would be warranted in finding Nelson guilty of first degree murder on the evidence already before them, and that, in his opinion, there was no possibility of acquittal. He explained the alternative theories of first degree murder, viz. deliberate premeditation and extreme atrocity or cruelty. He also told Nelson and his family that, under the circumstances, there was a substantial possibility of a death penalty if Nelson were convicted. He pointed out that if Nelson pled guilty to second degree murder he could be sentenced only to life imprisonment, and suggested that Nelson so plead. He explained the rights that Nelson would be relinquishing if he pled guilty. Defense counsel also told Nelson that he would not sponsor a plea of guilty to second degree murder unless Nelson had actually killed the woman.

As a result of this discussion, Nelson decided to change his plea. The trial judge did not inquire into the voluntariness of the guilty pleas when he accepted them, nor did he explain to Nelson which rights he was giving up or the elements of the charged offenses. The clerk merely recited each charge, asked Nelson for his plea, and received the response "guilty."

Nelson now contends that his pleas to second degree murder and sodomy were involuntary because he did not understand that by pleading guilty he waived his self-incrimination privilege and his rights to a jury trial and confrontation; he also contends that he did not realize that consecutive sentences could be imposed, and that he was not informed of the elements of the charged offenses.

 The record does not affirmatively show that Nelson's pleas were entered "voluntarily and understandingly" as required since the Supreme Court's decision in *Boykin v. Alabama,* 395 U.S. 238, 244, 89 S.Ct. 1709, 1713, 23 L.Ed.2d 274 (1969). In cases like the present one tried before *Boykin,* however, the burden of proving involuntariness lies with the petitioner. *Bruce v. Estelle,* 536 F.2d 1051, 1058 (5th Cir.1976), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977) (burden of proof); *United States ex rel. Curtis v. Zelker,* 466 F.2d 1092, 1097–98 (2d Cir.1972), *cert. denied,* 410 U.S. 945, 93 S.Ct. 1405, 35 L.Ed.2d 612 (1973) (same); *Smith v. Cox,* 435 F.2d 453, 457–58 (4th Cir.1970), *vacated on other grounds sub nom. Slayton v. Smith,* 404 U.S. 53, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971) (nonretroactivity); *United States ex rel. Hughes v. Rundle,* 419 F.2d 116, 118 (3d Cir.1969) (same); *see also Porter v. Superintendent,* 383 Mass. 111, 417 N.E.2d 1199, 1202 (1981). It was therefore up to the state court to hear Nelson's case, make findings of fact, and decide whether he met his burden of proof. The role of federal courts in habeas corpus proceedings concerning state court convictions is generally limited to determining whether a federal constitutional violation has occurred; the fact findings of state courts are entitled to a presumption of correctness unless they are not fairly supported by the record. *Sumner v. Mata,* 455 U.S. 591, 591–92, 102 S.Ct. 1303, 1304, 71 L.Ed.2d 480 (1981). Having reviewed the record thoroughly, we agree with the district court that the Superior Court's fact findings are adequately

supported, and therefore accept them as binding.

■ Nelson's contention that he was not informed of the rights he waived by pleading guilty is flatly contrary to the Superior Court's explicit finding that he "had a first hand understanding of his right to a jury trial and his right to confront the witnesses against him," and that he "intelligently waived" these rights along with his privilege against self-incrimination. Although the record in this case is sketchy, we note that the state court's findings are supported by the hearing testimony of Nelson's trial counsel, and that Nelson relies only on his bare assertion that he was not informed of his rights. The state court has already determined that Nelson failed to meet his burden of proof on this issue, and we are not in a position to reevaluate the evidence.

■ Nelson's second claim is that he was not informed that he might be sentenced to consecutive prison terms, and that this made his pleas constitutionally involuntary. In this situation, we must look at " 'whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a plea.' " *Hunter v. Fogg,* 616 F.2d 55, 58 (2d Cir. 1980), quoting *Caputo v. Henderson,* 541 F.2d 979, 984 (2d Cir.1976). The state court found that Nelson "was not aware of the 'maximum possible sentence' because he was not informed by either the trial judge or defense counsel of the possibility of consecutive sentences," but concluded that there was no reason to think that accurate information would have affected his decision to change pleas.

> The defendant's primary if not sole motivation to enter a plea ... was to avoid the possible imposition of the death penalty. Moreover, counsel had informed him that second degree murder was punishable by life imprisonment. The Court is unable to find any evidence in the record to show that defendant was relying upon the erroneous assumption that he could receive only one life sentence if he changed his plea.

We agree that any misunderstanding on Nelson's part as to sentencing did not materially affect his pleas, and therefore does not rise to the level of a substantial constitutional objection.

Nelson's third contention goes to his understanding of the elements of the charged offenses, especially the malice requirement for second degree murder. He claims that neither the trial judge nor defense counsel explained to him the meaning of malice or the fact that it was an essential element of second degree murder. He argues, relying on *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), that he lacked " 'real notice of the true nature of the charge against him,' " *id.* at 645, 96 S.Ct. at 2257, quoting *Smith v. O'Grady,* 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941), and that his guilty plea was therefore constitutionally deficient.

In *Henderson,* the Supreme Court held that a guilty plea to second degree murder was involuntary where it was established as a fact that the defendant had not been informed and was not aware that under New York law intent to kill was an essential element of the offense to which he pled. As we have observed elsewhere, the *Henderson* Court did not purport to lay down an absolute requirement that "the technical elements of an offense, which are often confusing even to lawyers," be recited to defendants wishing to plead guilty. *McGuirk v. Fair,* 622 F.2d 597, 598 (1st Cir.1980), *cert. denied,* 449 U.S. 882, 101 S.Ct. 233, 66 L.Ed.2d 106 (1980). The *Henderson* Court noted that

> [n]ormally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. *This case is unique because the trial judge found as a fact that*

*the element of intent was not explained to respondent.*

426 U.S. at 647, 96 S.Ct. at 2258 (emphasis added).

In the present case, the state court found as a fact that Nelson's counsel "informed defendant of the elements that distinguish first degree from second degree murder," and drew "a reasonable inference that counsel also informed defendant of the elements common to both offenses.... The Court concludes that in this case the defendant's bare assertion that no one informed him of the element of malice is therefore insufficient to sustain his burden of proof on this issue." Although Nelson correctly points out that nothing in the record shows that malice was specifically discussed, the state court was entitled to draw reasonable inferences from the evidence before it. In an essentially indistinguishable factual context we have held that

> "[d]efense counsel's extended discussion with the petitioner about the difference between first and second degree murder, the chances for conviction of first degree murder, the possibility of a manslaughter plea and his analysis of the evidence and inferences which the jury could draw all combined to fairly appraise [sic] him of the crime to which he ultimately pleaded."

*McGuirk,* 622 F.2d at 599 (quoting district court findings).

■ The state court's imposition of the burden of proof on Nelson is also consistent with the presumption that "in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Henderson,* 426 U.S. at 647, 96 S.Ct. at 2258. And, following *Summer v. Mata,* 455 U.S. at 591–92, 102 S.Ct. at 1304, we review the reasonableness of a state court's factual inferences under the same deferential standard as its fact findings. In light of the burden of proof, we agree with the district court that the state court correctly found that Nelson was informed of the malice requirement, and that

his plea to second degree murder was voluntary.

■ The district court held that the sodomy charge, unlike the murder charge, was involuntary because it was not even mentioned in connection with Nelson's discussion with counsel, the only basis in the record for finding that Nelson had real notice of the charges against him. The state court made no fact findings on the question whether Nelson was informed of the meaning of the sodomy charge or not; but in denying Nelson's motion it implicitly relied on the unelaborated statement in Nelson's confession that he "put [his] private between [the victim's] buttocks as she was leaning over against the wall of the shed, but she was getting weak from bleeding so much and she fell down." The state court apparently found that this was a "factual statement or admission necessarily implying" guilt on the charged offense, and concluded that it could "serve as a substitute for either a finding after trial, or a voluntary admission" of sodomy. *Henderson,* 426 U.S. at 646, 96 S.Ct. at 2258.

We do not address the question whether Nelson's statement would be legally sufficient, if made in open court at the change of plea hearing, as an admission to a completed offense under the Massachusetts sodomy statute, Mass.Gen.Laws Ann. ch. 272, § 34; the precise contours of that statute are for the state courts to determine. We do hold that the confession did not meet the requirements of *Henderson.* Although the trial judge ruled that it was voluntarily made, it was never adopted by Nelson in open court: on the contrary, he repudiated it and claimed that it had been coerced. The probative value of the confession would have been a question for the jury if Nelson had not decided to change his plea. In the complete absence of any indication in the record that the trial judge or defense counsel discussed the sodomy charge with Nelson, or that Nelson admitted or stipulated to factual guilt in open court, we affirm the holding of the district court that his plea of guilty on the sodomy charge was not made

intelligently and voluntarily, and was therefore invalid.[1]

 A complicating factor in this case is Nelson's illiteracy and low intelligence rating. Underlying all of Nelson's claims is the argument that the voluntariness of his guilty pleas should be assessed on the basis of his subjective capacity to understand the charges against him rather than the objective criterion of explanations made to him by defense counsel. With respect to the second degree murder charge—the only remaining conviction at this point—this case is similar to *Allard v. Helgemoe*, 572 F.2d 1 (1st Cir.1978), *cert. denied*, 439 U.S. 858, 99 S.Ct. 175, 58 L.Ed.2d 166 (1978), in which we addressed the problem of a defendant who pled guilty to burglary while lacking the capacity to understand the intent requirement of that offense. We found there that, although the defendant may have been unable to grasp the legal concepts explained to him by defense counsel, he was capable of relying on counsel's judgment and of deciding to plead guilty in order to receive a more lenient sentence than if he were found guilty after trial. *Id.* at 2. We noted that there was "no indication in [*Henderson*] at all that the Court ever considered the problem of a fully informed defendant who lacked the capacity to understand some part of the charges against him," *id.* at 5, and concluded that the *Henderson* notice requirements go to "the objective requirements of due process," not the requisite mental capacity for guilty pleas. *Id.* at 6. Adopting the standard of competence to stand trial as that for capacity to enter guilty pleas, we held that "incapacity to understand part of the elements of the offense with which one is charged does not without more, make a guilty plea involuntary in constitutional terms." *Id.*

In the present case, we accept the state court's finding that Nelson's "primary if not sole motivation to enter a plea . . . was to avoid the possible imposition of the death penalty." [2] Coupled with the finding that Nelson's counsel explained the essential elements of second degree murder to him before he entered his guilty plea, this adequately supports the conclusion that the plea to second degree murder was voluntary and intelligent.

*The judgment of the district court is affirmed.*

---

1. Our holding is fully consistent with the rule established in *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), that "the subjective belief in one's own innocence does not render a guilty plea constitutionally suspect as long as there are grounds for doubting the reliability of that belief and for calculating that one's defense at trial would most likely be unsuccessful." *Allard v. Helgemoe*, 572 F.2d 1, 3 (1st Cir.1978), *cert. denied*, 439 U.S. 858, 99 S.Ct. 175, 58 L.Ed.2d 166 (1978).

2. A guilty plea, of course, "is not invalid merely because entered to avoid the possibility of a death penalty." *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970).