[NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 96-2285

UNITED STATES,

Appellee,

v.

JOHN PATTI,

Defendant, Appellant.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge] 



Before

Selya, Circuit Judge, 
Cyr, Senior Circuit Judge, 
and Lynch, Circuit Judge. 



John Patti on brief pro se. 
Paul M. Gagnon, United States Attorney, and Jean B. Weld, 
Assistant United States Attorney, on Motion for Summary Disposition
for appellee.



May 2, 1997


Per Curiam. Pursuant to a written plea agreement, 

defendant John J. Patti pled guilty to a one count indictment

charging him with conspiracy to commit access device (credit

card) fraud by knowingly and intentionally using a

counterfeit credit card, in violation of 18 U.S.C. 371, and

1029(a)(1). He was sentenced to 18 months' imprisonment.

On appeal he seeks for the first time to withdraw

his guilty plea. To prevail on this "afterthought ground" a

defendant must show a "substantial defect" in the record of

the Rule 11 proceeding itself. United States v. Piper, 35 

F.3d 611 (1st Cir. 1994), cert. denied, 115 S. Ct. 1118 

(1995); see also United States v. Noriega-Millan, -- F.3d --- 

, 1997 WL 151202 *4 & n.4 (1st Cir. Apr. 7, 1997).1 This he 1

has not done.

Patti claims that his plea was involuntary because

he did not understand the "true nature of the elements of the

crime charged in the indictment." He alleges that there was

an insufficient factual basis for his plea, that his attorney

failed to explain the charge to him, and the court

mischaracterized the charged crime. 

The record contradicts these assertions. Patti was

advised by the Court, in plain and understandable terms, of

 

1An appellant faces a "high hurdle" when he seeks to set 1
aside a guilty plea for the first time on appeal, although
the contours of the burden are "somewhat cloudy." Noriega- 
Millan, -- F.3d ---, 1997 WL 151202 *6 n.4 (citations 
omitted). We need not reach that issue here. 

-2-

the elements of the offense. True, in addition to telling

Patti 

that he was charged with conspiring to use a particular

"counterfeit" card, the court also defined the term

"unauthorized" card. "Unauthorized" has a different

statutory meaning from "counterfeit," see 18 U.S.C.  

1029(e)(2)(3), and use of an "unauthorized" card is

criminalized in a separate subsection of the law. See 18 

U.S.C. 1029(a)(2). The two subsections carry different

maximum penalties, but the crime to which Patti actually pled

guilty -- conspiracy to commit another offense, see 18 U.S.C. 

371 -- carries a maximum five-year penalty regardless of

whether the object offense is defined in subsection (a)(1) or

in subsection (a)(2) of 18 U.S.C. 1029. 

The "totality" of the hearing record, however,

reveals no misunderstanding as to the charge. United States 

v. Martinez-Martinez, 69 F.3d 1215, 1222 (1st Cir.), cert. 

denied, 116 S. Ct. 1343 (1995). The elements of the crime 

were reiterated at the hearing by the government prosecutor,

whose offer of proof emphasized that the card fit the

definition of "counterfeit" because it had been altered.2 2

The definition of a "counterfeit access device," expressly

 

2The name, account number and bank imprinted on the face 2
of the card did not match the information encoded on the
card's magnetic stripe. 

-3-

including any component that is "counterfeit, fictitious,

altered, or forged," was fully set forth in the written plea

agreement. Patti signed the agreement, and certified his

understanding of its terms. 

Under oath at the plea hearing, Patti said that he

understood the charge, his attorney said that he had reviewed

each paragraph of the indictment and the plea agreement with

Patti, and Patti swore that he was fully satisfied with his

attorney's representation and advice. Any error in the

district court's explanation thus was harmless. United 

States v. Buckley, 847 F.2d 991, 1000 n.11 (1st Cir. 1988), 

cert. denied, 488 U.S. 1015 (1989); see also United States v. 

Japa, 994 F.2d 899, 902 (1st Cir. 1993). Even if, as Patti 

now belatedly claims, he personally did not understand a

legal nuance, an informed plea based on competent counsel's

advice3 is acceptable in the circumstances of this case. 3

Allard v. Helgemoe, 572 F.2d 1, 6 (1st Cir.), cert. denied, 

439 U.S. 858 (1978); see also Nelson v. Callahan, 721 F.2d 

397, 401 (1st Cir. 1983). 

Patti also now claims that there was an

insufficient factual basis for his plea because he did not

 

3If Patti now wishes to offer extra-record facts to prove 3
otherwise, he must initiate a collateral proceeding under 28
U.S.C. 2255. Noriega-Millan, -- F.3d --, 1997 WL 151202 *6 
n.3. We caution, however, that ordinarily a defendant will
not be heard, even in a collateral proceeding, to controvert
his own sworn Rule 11 statements. See United States v. Butt, 
731 F.2d 75, 80 (1st Cir. 1984).

-4-

know that the card specified in the indictment was

counterfeit. The record reflects, however, that Patti

admitted to the probation officer that when he joined the

conspiracy he knew its breadth. He knew it was a "complete,"

on-going, "stolen credit card scam," replete with a

designated "fence." Indeed, six credit cards, all of which

were once valid, but subsequently traded, sold, or stolen and

reprogrammed, were found in Patti's rented automobile. He

admitted knowing that he had no right to use the card

specified in the indictment, and assumed it was "stolen."

The only ignorance he claimed was of the fact that the card

was "all rigmaroled like . . . they say." 

True, a "conspiracy to commit a particular

substantive offense cannot exist without at least the degree

of criminal intent necessary for the substantive offense

itself." Ingram v. United States, 360 U.S. 672 (1959); see 

also Piper, 35 F.3d at 614 (explaining that a conspirator 

must have intended both to agree and to effectuate the

commission of the substantive offense). We need not decide

here, however, how much technological knowledge may be

imputed to a conspirator who has admittedly conspired to use

an illicit access device. 

The hearing record reflects a factual basis for

doubting the reliability of Patti's self-professed ignorance

that the card was altered, and a rational reason for

-5-

calculating that his own interests would be best served by a

guilty plea. See North Carolina v. Alford, 400 U.S. 25 

(1970). An informed and calculated plea based on competent

counsel's advice about the wisdom of pleading guilty or going

to trial is all that is required. Allard, 572 F.2d at 6.  

As to Patti's remaining challenges to the sentence:

(1) We see no "clear error" in the district

court's decision to increase Patti's guideline sentencing

range by two levels for "more than minimal planning," under

USSG 2F1.1(b)(2). Ample record evidence supports the

court's finding that Patti's participation in the conspiracy

was not a "spur of the moment" crime, but the product of more

than minimal planning. United States v. Gregorio, 956 F.2d 

341, 343 (1st Cir. 1992). In addition to Patti's two known

uses of the counterfeit card on the day he was arrested, the

other five illicit cards were found concealed in the panels

of an automobile which he had rented two weeks earlier. See 

USSG 1B1.1 comment (n.1(f)).

(2) There is also no support for Patti's argument,

raised for the first time on appeal, that the enhancement for

"more than minimal planning" somehow violated the plea

agreement or Patti's understanding of the plea agreement, and

required the court to sua sponte offer Patti an opportunity 

to withdraw his guilty plea. 

-6-

The plea agreement expressly was made subject to

Fed. R. Crim. P. 11(e)(1)(B), and the Sentencing Guidelines.

Before entering his guilty plea, Patti was unequivocally

informed by the court that he would not be permitted to

withdraw the plea except in one circumstance. "If I do not

accept the [$2,000 fraud loss] stipulation, Mr. Patti, I will

allow you to withdraw your plea of guilty if you choose to do

so, however, you will not be allowed to withdraw your plea

for any other reason; do you understand?" Patti said that he

understood. Accordingly, the judgment of the

district court is affirmed. 

-7-