Frank W. TORRES, Jr.

v.

Everett PERRIN, Jr., Warden New Hampshire State Prison, Gregory H. Smith, Attorney General of the State of New Hampshire.

Civ. A. No. 82–124–D.

United States District Court,
D. New Hampshire.

Aug. 27, 1982.

Eleanor Krasnow, Manchester, N. H., for petitioner.

Peter W. Mosseau, Asst. Atty. Gen., Concord, N. H., for respondents.

## MEMORANDUM

NORTHROP, Senior District Judge.

The instant petition for writ of habeas corpus was filed by Frank W. Torres, Jr., a state prisoner incarcerated in the United States Penitentiary, Lewisburg, Pennsylvania, on March 3, 1982, together with a petition for leave to proceed *in forma pauperis,* which leave was granted on March 3, 1982. Respondents, Everett I. Perrin, Jr., Warden of the New Hampshire State Prison, and Gregory H. Smith, Attorney General of the State of New Hampshire, filed an answer and objection to the petition on March 19, 1982.

The petition states, as grounds for relief, that "[p]etitioner's guilty plea was not voluntary because it was not an intelligent admission that the petitioner committed the offense and did not have a factual basis." The matter eventually came on for an evidentiary hearing on the merits on August 23 and August 24, 1982.

*Background*

Frank W. Torres, Jr. had been arrested in April, 1978, and subsequently indicted on September 14, 1978, for the first degree murder of his friend, William Maxson.[1] A jury trial was scheduled to commence on January 17, 1979 in the Superior Court of Cheshire County. On that date, however, the defendant, petitioner herein, presented to the court, the Honorable Joseph A. DiClerico, Jr., presiding, an executed waiver of indictment for second degree murder and entered a plea of guilty thereto, as well as to an unrelated charge of attempted burglary. The crime to which petitioner plead is that he had "recklessly caused the death of William Maxson under circumstances manifesting an extreme indifference to the value of human life, by shooting [him] in the head with a handgun."[2] Petitioner also executed an acknowledgement of rights form at that time, in which he affirmed that he was aware of the constitutional rights which he was waiving.[3] Further, petitioner affirmed as follows:

I have discussed this present plea of GUILTY to the charge in the indictment

---

1. Petitioner's Exhibit 1.

2. Petitioner's Exhibit 2.

3. Petitioner's Exhibit 5.

with my attorney who has explained the nature of the charge to me. I fully understand the charge of which I stand accused, which is Murder Second Degree RSA 630:1–bI(B) . . . .

The acknowledgment of rights form also had been executed by the three counsel then representing plaintiff, Attorneys Green, Falk and Kromphold, as a declaration that they had thoroughly explained to the defendant the nature and elements of the charge which the State must prove beyond a reasonable doubt, and as an acknowledgment of their belief that the defendant possessed the mental capacity to evaluate and to waive his constitutional rights.

The guilty plea was accepted by the trial court and a sentence of twenty-two years to life was imposed on the defendant for the second degree murder offense. Defendant unsuccessfully filed a motion to reduce his sentence and to withdraw his guilty plea on the basis of involuntariness due to his medicated state at the time of entering the plea. The motion subsequently was amended to raise the ground that the defendant had not made an intelligent admission that he committed the offense. Again, defendant was unsuccessful, both at the trial court level and on appeal. *State v. Torres,* 121 N.H. 828, 435 A.2d 527 (1981).

*Discussion*

Petitioner requests here, as a procedural matter, that the Court not accord the usual deference to the findings of the state court in connection with the voluntariness of his guilty plea but, instead, to render findings *de novo* on that issue. As reasons for departing from the general rule, petitioner asserts that the statutory scheme of the State of New Hampshire defining the various types of homicide, especially the culpability elements thereof, is complex and misunderstood and misapplied by the courts and attorneys. Second, petitioner contends that the record of the state court proceedings, both at the guilty plea and sentencing session and the post-trial motions stage, is

devoid of facts indicating that the petitioner admitted to facts equating to the degree of culpability requisite to sustain a conviction for the crime of murder in the second degree. *See* 28 U.S.C. § 2254(d)(3). Finally, petitioner states that the state court proceeded on an erroneous legal basis; namely, it misperceived his challenge to the guilty plea as an *Alford*-type challenge, rather than a *Morgan*-type challenge.

It appears to the Court that petitioner, to a degree, conveniently interpolates form and substance; namely, he discusses interchangeably the concept of a record devoid of facts to support the finding of voluntariness of the guilty plea and the concept of a guilty plea entered on the basis of facts legally insufficient to establish defendant's culpability. Nevertheless, conceding that these concepts might engender a degree of confusion, the Court shall enter its findings and conclusions based on the record in the state court proceedings, the submissions of the parties in this habeas corpus proceeding, and the testimony and evidence introduced at the evidentiary hearing.

Petitioner challenges the validity of his guilty plea to the charge of second degree murder entered on January 17, 1979, in the Superior Court of Cheshire County, New Hampshire, based on its alleged constitutional infirmity under the holding of *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). More specifically, petitioner asserts that:

> [His] plea of guilty to a state charge of "second degree murder" did not constitute an intelligent and voluntary waiver of the federal constitutional rights, guaranteed by a trial of the criminal charge, in that Petitioner, at the time of his plea, was not informed or otherwise sufficiently aware of the nature of the critical culpability element of the charged offense, nor did Petitioner, at the time of his plea, admit to facts which were legally sufficient to establish his guilt in fact in respect to that element.

Motion for Evidentiary Voluntariness Hearing, page 1.

The sentencing court, prior to accepting the plea of guilty, conducted an inquiry into the understanding and voluntariness of the defendant's waiver of rights. The inquiry went on further:

The Court: Do you understand that by pleading guilty to these charges you are admitting the truth of the charges against you?

The Defendant: Yes, Your Honor.

The Court: And are you pleading guilty because you are guilty?

The Defendant: Yes, Your Honor.

The Court: On December 20, 1977, in Marlborough, did you commit the crime of second-degree murder in that you recklessly caused the death of William Maxson under circumstances manifesting an extreme indifference to the value of human life by shooting the said William Maxson in the head with a gun?

The Defendant: Yes, Your Honor.

Transcript of Plea and Disposition, pp. 27–32.

The court concluded that the defendant's decision to plead guilty was freely, voluntarily and intelligently made, and an intelligent choice among alternatives. The court further stated that the statement of facts presented by the Assistant Attorney General, to which defense counsel raised no objections, was "strong evidence of actual guilt with respect to the indictment for second degree murder." Transcript, p. 34.

On appeal, the Supreme Court of New Hampshire found that "all three of defendant's counsel explained the charge to him" and held that the trial court's finding of voluntariness of the plea was supported by the record." *State v. Torres, supra.*

The affidavit of Frank W. Torres, Jr. filed in these proceedings on June 17, 1982, states that his attorneys told him nothing about murder two, nor did they explain the difference between murder one and murder two. He further alleges that his attorneys never told him what facts the State would

have to prove to convict him of murder two, nor did they show him the statute defining the crimes of murder one, murder two and manslaughter. Petitioner states that he was uncertain as to when he first was presented with the acknowledgement of rights form and that he does not believe he read the form because of his emotional state on the date of sentencing. He states that he has no recollection that his attorneys read the murder two charge to him before he entered his guilty plea, but does acknowledge that he signed the form freely and knowingly.

The testimony of Mr. Torres on August 24, 1982, echoed the essence of his sworn affidavit. He testified that, although he now knows that murder one involves intent, he does not know the difference between that offense and murder two, to which he plead. He stated that "nobody said nothing about a lesser charge"—negligent homicide and manslaughter, but he later learned of these possibilities from his fellow inmates, at which time he concluded that the State gave him a bad deal. Mr. Torres testified that he never asked his attorneys to explain the difference between the two offenses, but that they did inform him that murder two was a lesser charge.

Petitioner acknowledged that he had seen the information for second degree murder before entering his plea, but states that his understanding of the charge is that he intentionally caused the death of the victim. He admits now to understand that murder two involves an element of recklessness, while manslaughter involves no element of intent. He stated that, approximately six weeks after the indictment, he asked his attorneys to "make a deal" and they stated they would talk to the Attorney General's office about murder two. He testified that the attorneys' first report to him was that the Attorney General wanted fifty years to life, but that his attorneys stated they were not done negotiating. He acknowledged that his attorneys discussed possible defenses with him, but that it appeared unlikely

that the defense of temporary insanity would be provable under the standard of New Hampshire law.

Petitioner's feeling at the time he entered the plea was that his attorneys got him a good deal with respect to the twenty-two years to life sentence, as compared to a sentence for natural life. Petitioner testified that "[he] knew all the evidence the [State] had."

On August 23, 1982, the Court heard the testimony of Douglas Green and Arnold Falk, two of the three attorneys who had represented petitioner during the stage of the proceedings at issue here. The testimony of the two counsel, who represented to the Court that they had not discussed the matter during these habeas corpus proceedings, was harmonious in all significant and material respects.

Douglas Green, the first attorney appointed to represent the petitioner, testified that commencing in May or June, 1978, he saw the petitioner on numerous occasions and spoke with him. He stated that he went over with Mr. Torres on more than one occasion the elements of the crime for which he had been indicted and reviewed the statute relevant thereto with him, including reading the definition of "purposely." Mr. Green testified that he was certain he explained to Mr. Torres the nature of the lesser-included offenses, including the pertinent mental states, prior to the issuance of the indictment for murder one. He specifically recalls reading to the petitioner the statutory definition of "recklessness" and the statutory definition of "negligence." His testimony is that he spent quite a bit of time going over with Mr. Torres the statutes defining first and second degree murder, manslaughter and assault, and that he explained these crimes to Mr. Torres in non-statutory terms. Mr. Green specifically stated that the term "recklessness" was explained to Mr. Torres in the context of Mr. Torres' actions at the time of the shooting.

The attorney testified that the petitioner was advised the first degree murder charge could be reduced to second degree murder, but that the Attorney General's office told him that manslaughter was not an available option in light of the evidence garnered against Mr. Torres. He also stated that all three attorneys went over the information and the murder two statute, to which Mr. Torres plead, on the date of the plea and sentencing session. In summary, Mr. Green's belief was that his client understood what was transpiring and that Mr. Torres made the ultimate choice between proceeding to trial or negotiating a plea agreement.

The testimony of Attorney Arnold Falk, who was appointed to represent the petitioner in April, 1978, soon after his arrest, described a similar approach to advising the client; namely, he would read the pertinent statutes, especially the culpability states required for the various offenses, to Mr. Torres and then apply the elements of the various crimes to the facts, as then known to him. Mr. Falk specifically acknowledged that the term "recklessly" was defined in relation to the nature of the acts ascribed to Mr. Torres, as known to the attorneys, and in contrast to other fact patterns applicable to other offenses. Mr. Falk states that he explained to Mr. Torres the reason why the State would not negotiate a plea to manslaughter in light of the evidence available to the State. He recalls that the discussion of manslaughter included a contrast of that crime to the culpability requirement for murder two—"reckless with extreme indifference to the value of human life." The witness recalled that Mr. Torres indicated to him that he understood Mr. Falk's explanation of "recklessness" under the murder two statute in the context of the facts of petitioner's case.

Mr. Falk specifically recalled that, upon learning of the damaging evidence elicited through the deposition and sworn statement of Michael Favreau, the friend of petitioner and alleged to have been a participant in the mutilation of the body of the decedent, Mr. Falk and the other two coun-

sel discussed these new facts with Mr. Torres in relation to the posture of his defense. Later, when Assistant Attorney General Heed indicated that a plea to second degree murder would be considered, the attorneys lined up petitioner's defense in relation to the charge of second degree murder. Attorney Falk has specific recollection that, at that time, the element of "recklessness" in relation to the murder two statute was explained to Mr. Torres. Mr. Falk stated that he had "developed a certain feeling for [Mr. Torres'] intelligence," and that he believed Mr. Torres understood the explanations by counsel of these terms.

Mr. Falk corroborated the testimony of Mr. Green that the petitioner desired, almost from day one, to negotiate a plea with the Attorney General's office, and that the terms of the plea agreement had been set sometime in October, 1978, when the damaging evidence had been elicited from Mr. Favreau.

Mr. Falk was with Mr. Torres at the time the acknowledgment of rights form was executed. He recalls reading the form to Mr. Torres and further recalls going over these rights with Mr. Torres even before the terms of the plea agreement had been set.

The testimony of petitioner and that of the attorneys who had represented him are in contradiction, and the issue thus becomes one of credibility. From the viewpoint of self-interest, the witnesses Green and Falk appear to have no cause to color their description of the events surrounding the plea bargain, inasmuch as petitioner has been quite forthright in these proceedings that he is levelling no charge of ineffective assistance of counsel. In contrast, petitioner stands on a much different footing. In fact, petitioner's testimony at the evidentiary hearing reveals that statements made by him to the trial court at the time he entered the guilty plea were made with a callous disregard for their accuracy and veracity. This is the case whether or not, as petitioner testified, he did not pay attention to the proceedings and mechanically said "yes" to the inquiries of the court and the representations made by the prosecutor and his counsel.

Although petitioner's formal education did not go beyond the seventh grade level, his demeanor and ability to articulate his position to the Court and to counsel markedly distinguish him from the petitioner in *Henderson v. Morgan,* who was described as having an unusually low mental capacity to appreciate and understand the significance of matters affecting his life. Mr. Torres well knew the situation or "predicament," in his words, in which he was. He articulated very clearly that he instructed his attorneys to get the best possible "deal" for him. Petitioner was very much apprised of the developments of these negotiations, and the substantive developments of the State's case against him and the effect of the evidence on his defense, which primarily was aimed at negating the requisite element of culpability.

Although the petitioner may have been anxious or even traumatized by the prospect of incarceration on the day of his plea and sentencing, when such was almost a reality, prior to that he worked with his attorneys over a period spanning April, 1978 until January, 1979, toward effecting a plea bargain. At the outset, he was aware that the State would not agree to any lesser charge than murder in the second degree— an offense which the attorneys had explained to him in terms of his own conduct and the evidence which the State had obtained. Mr. Torres was not presented for the first time at the date of sentencing with mere notice that he would be charged with a lesser offense to which he could elect to plead. Petitioner had "real notice" of the crime and the elements thereof to which he could, and did in fact plead guilty. His choice to do so was a reasoned and intelligent one under the totality of the circumstances.

Further, in his motion for incarceration under suspended sentence filed on August

6, 1979 in the state court, petitioner represented to the court that, although he was under the influence of drugs at the time of the plea and sentencing hearing, he did not answer the questions of the court incorrectly. The pattern of conduct exemplified by petitioner in the course of these judicial proceedings compels the Court to reject his testimony as not worthy of belief.

The Court specifically finds that Attorneys Green and Falk had fully advised the petitioner, from the inception of their representation of him following the arrest in April, 1978, of the statutory offenses and the elements thereof under which he might be, and ultimately was charged. This advice included explanation of murder in the first and second degrees, the differences between these two types of offenses and, significantly, an explanation of the types of second degree murder—that which involved purposeful and intentional conduct and that which involved the reckless indifference to human life conduct. The attorneys had explained these various offenses to the petitioner by relating it to petitioner's purported acts and by offering hypothetical fact patterns—a manner most calculated to impart to their client an understanding of the differences and the elements of each of these offenses.

As regards the acknowledgment of rights form and circumstances surrounding its execution, the Court finds credible the testimony of Attorneys Green and Falk that they had read, or pursuant to standard practice, would have read aloud to petitioner the contents of the form. Further Attorney Falk testified that, even before a bargain had been struck, he advised Mr. Torres of the rights he would be waiving were Mr. Torres to elect to enter a guilty plea. In contrast, petitioner's standard practice was to not pay attention to judicial proceedings and the importance of responding truthfully and accurately. Although it is true, as counsel for petitioner has pointed out, that the printed waiver of rights form contains language of intent to commit the crime, which is not an element of the crime to which petitioner plead, that alone is insufficient to discredit the testimony of counsel that the contents of the form and the various rights petitioner was waiving had been gone over with petitioner.

In light of the above, and under all of the circumstances, the Court finds that Mr. Torres had real notice of the elements of the crime to which he eventually plead on January 17, 1979, especially the element of "recklessness manifesting an indifference to the value of human life." As a consequence, the Court concludes that, as a matter of law, the guilty plea entered on January 17, 1979 to the crime of second degree murder was voluntary and knowing in a constitutional sense. A separate order will be entered in accordance with this ruling.

### ORDER

In accordance with the aforegoing Memorandum of Court of even date herewith, IT IS, this 27th day of August, 1982, ORDERED:

1. That the petition of Frank W. Torres, Jr., for issuance of a writ of habeas corpus BE, and the same hereby IS DENIED.

2. That the request of petitioner for issuance of a certificate of probable cause BE, and the same hereby IS DENIED for the reason that any such appeal would be frivolous.